STEPHEN JENNINGS *vs.* ARTHUR C. MOORE.

Suffolk.    January 13, 1905. — September 25, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Bills and Notes.    Surety.    Conflict of Laws.    Interest.    Evidence.*

In this Commonwealth the true relation between the parties to a promissory note can be shown in equity, if not also at law, and a defendant sued as the maker of a note can show that an indorser before delivery was the principal obligor and that the defendant was in the position of a surety.

If the holder of a promissory note holds as security therefor certain shares of stock previously pledged to secure two overdue notes of an indorser of the note who in fact is the principal obligor, which notes the holder has purchased under an agreement with that indorser, and if, having by the terms of the notes the right to sell the shares thus held as collateral, he does so, but fails to realize their value from want of due care in the sale, he must account to the nominal maker of the note, whose real relation is that of a surety, for the difference between the amount realized on the sale of the collateral and the amount which would have been realized if he had exercised due care in the sale. If in such a

case the holder of the note has made an agreement not to prove his claim on the two notes of the indorser, who is the principal obligor, against the insolvent estate of that indorser, and this agreement has caused loss to the nominal maker, who is the surety, the surety is entitled to deduct the amount of this loss also from any amount for which he still may be liable to the holder of the note.

In an action on a promissory note dated "Boston, Mass." and signed in New Hampshire, it appeared, that the note either was handed to the plaintiff in Boston, or was mailed to him there from New Hampshire, that the note was given in pursuance of an arrangement by which the plaintiff agreed to take up two notes, signed by the indorser who was in fact the principal obligor of the note sued upon, which were held by a bank in Manchester, New Hampshire, by means of a fifteen days' sight draft upon the plaintiff payable to the Manchester bank's correspondent in Boston, that the note sued upon stated that it was secured by certain shares of stock then held by the Manchester bank as collateral for the two notes to be taken up by the plaintiff, that the sight draft was drawn and was paid in Boston by the plaintiff who thereupon received from the Manchester bank the two notes and the shares of stock securing them. The defendant contended that the note sued upon was governed by the law of New Hampshire, and by that law was invalid on account of the stipulated rate of interest. *Held*, that even if the note was mailed to the plaintiff from New Hampshire, instead of being handed to him in Boston, it was as matter of law a Massachusetts contract.

Rule referred to with approval, although not in controversy, that in an action on a valid promissory note bearing interest at a rate greater than six per cent per annum, the plaintiff, if he prevails, is entitled to interest at the agreed rate to the date of the verdict and not merely to the date of his writ.

In an action on a promissory note against the nominal maker, who has in fact the rights of a surety, the principal obligor having been an indorser of the note before delivery and having pledged certain shares of stock to secure the note subject to the lien of other notes of his own which the plaintiff as part of the trade agreed to take up, and having become insolvent and made an assignment for the benefit of creditors, evidence of what was said between the indorser of the note and the defendant is competent if it tends to show that the defendant in delivering the note acted on what was agreed upon between the indorser and the plaintiff, and evidence of an agreement between the plaintiff and the assignee of the estate of the indorser is competent if it tends to show how the plaintiff dealt with the shares of stock pledged as collateral by the indorser to which the defendant as a surety was entitled in equity on paying the debt owed by him to the plaintiff.

In an action on a promissory note, where the defendant contends that the note is governed by the law of another State, evidence of the agreement in pursuance of which the note was given is competent to show that the note was a Massachusetts contract.

CONTRACT on a promissory note dated Boston, Mass., April 10, 1896, payable one month after date to the order of Stephen Jennings, for $6,200, with interest at the rate of one and one half per cent per month, payable monthly, signed by the defendant and indorsed by J. C. Moore. Writ dated April 17, 1902.

The note sued upon was as follows:

"Boston, Mass., April 10, 1896.

"One month after date, for value received, I promise to pay to the order of Stephen Jennings at his place of business in Boston, six thousand two hundred dollars, with interest at the rate of one and one half per cent per month, payable monthly having deposited with said Jennings, as collateral security for payment of this or any other liability or liabilities of mine to said Jennings, due or to become due, or that may be hereafter contracted, the following property, viz: three certificates for twenty shares each stock in the Laconia and Lake Village Horse Railroad, numbered 166, 167 and 168 respectively. Also two certificates for thirty shares each stock in Laconia and Lakeport Street Railway Company numbered 15 and 16 respectively one hundred and twenty shares in all. With the right to call for additional security should the same decline ; and on failure to respond or, in case the interest shall not be paid monthly as agreed, this obligation shall be deemed to be due and payable on demand, with full power and authority to sell and assign and deliver the whole of said property or any part thereof, or any substitute therefor, or any additions thereto, at any Broker's Board, or at public or private sale, at the option of said Jennings, or his assigns, and with the right to purchase himself at such Broker's Board, or public sale, on the non-performance of this promise, or the non-payment of any of the liabilities above mentioned, or at any time or times thereafter, without advertisement or notice anything hereinbefore expressed to the contrary notwithstanding. And after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so to be made, to pay any, either or all of said liabilities, as said Jennings, shall deem proper, returning the overplus, if any, to the undersigned.

"Arthur C. Moore."

Indorsed on back: "Waiving demand and notice. J. C. Moore."

The defendant in answer set up a general denial, a plea of payment, and allegations that the note was executed by the defendant for the accommodation of the plaintiff at his request and without consideration, and that it was secured by collateral of value sufficient to pay the plaintiff the amount of the note and

interest thereon in full, but that the plaintiff had misapplied and misappropriated the collateral and that he had not accounted for the collateral and had converted it to his own use; that the note, having been executed by the defendant without consideration and indorsed by Joseph C. Moore, who was the principal obligor as the plaintiff well knew, the plaintiff had subsequently released Joseph C. Moore from any claim upon the note, and that the defendant was thereby released and ought not to be held to answer to the plaintiff; and, finally, that the note was in violation and evasion of the laws of New Hampshire where it was made, in that the rate of interest exceeded the legal rate in the State of New Hampshire.

At the trial in the Superior Court *Sherman,* J. ordered a verdict for the plaintiff for the amount of the note and interest at the rate of one and one half per cent per month to the date of the writ and of six per cent per annum thereafter. At the request of the defendant, the judge reported the case for determination by this court. If the ruling in favor of the plaintiff was correct, judgment was to be entered on the verdict; otherwise, this court was to make such disposition of the case as law and justice might require.

The material facts are stated in the opinion.

*J. W. Allen,* for the defendant.

*B. B. Dewing,* for the plaintiff, submitted a brief.

LORING, J.   It appears from the report that on April 9, 1896, one Dr. J. C. Moore, who had "made an assignment for the benefit of creditors," called upon the plaintiff at his office in Boston and told him that among his assets were one hundred and twenty shares of the Laconia and Lakeport Street Railway, (formerly the Laconia and Lake Village Horse Railroad,) which he did not wish sold at a forced sale; that he and his friends had control of the road and that he thought the stock worth more than it was likely to bring if pushed to a sale.   These one hundred and twenty shares were then pledged as security for two notes (sixty shares on each note) held by a bank in Manchester, New Hampshire.   One of these notes for $3,000 was signed by Dr. Moore alone; the other note for $2,500 was signed by him and by one Fellows, and both were overdue.   At Dr. Moore's request the plaintiff agreed to take up the notes if Dr. Moore

" would arrange for a fifteen days' sight draft to the Manchester bank's correspondent bank in Boston," the money advanced to be repaid with interest at one and one half per cent per month. The plaintiff asked Dr. Moore if he " couldn't get some one to make the new note," as he, Dr. Moore, was in insolvency, and suggested his nephew, the defendant. The plaintiff made out the note here sued on, Dr. Moore took it back to New Hampshire, and it was either handed to the plaintiff by Dr. Moore (as the plaintiff testified) or mailed to him (as Dr. Moore and the defendant testified). Afterwards the fifteen days' sight draft was drawn and was paid by the plaintiff in Boston; and thereupon he received the two notes with the one hundred and twenty shares of stock.

On January 7, 1897, the plaintiff sold the stock at auction in Boston and bought it in for $10 a share. The jury were warranted in finding that the stock was a local stock not known in the Boston market; also that at the date when sold by the plaintiff it had a market value in Laconia, New Hampshire, of from $45 to $54 a share. They were warranted also in finding that the assignee of Dr. Moore's estate objected to the stock being transferred to the plaintiff, on the ground that the sale had not been properly conducted and that the plaintiff had not realized the full value of it. After protracted negotiations it was agreed between the assignee and the plaintiff that no proof should be made by the plaintiff against the estate of Dr. Moore, and that the assignee should not redeem the stock. The stock was transferred to the plaintiff on October 8, 1900, under this agreement. In August, 1897, (that is, the August succeeding the January in which the plaintiff sold the stock,) the defendant wrote to the plaintiff stating that he understood that he had sold the stock and asking for the return of his, the defendant's note. The plaintiff acknowledged receipt of the letter and promised to bring the matter before his attorney. Nothing more was heard by the defendant from the plaintiff until this writ, dated April 17, 1902, was served upon him.

Before considering the several contentions made by the defendant, it will be convenient to make a statement of the rights of the parties resulting from these transactions.

The equity in the one hundred and twenty shares of stock was

in the assignee of Dr. Moore's estate. The shares were collateral for the two notes taken up by the plaintiff and held by him as his property, which notes together with the shares he was bound to surrender to Moore or the defendant on payment of the note here sued on. It is stated in that note (the note here sued on) that these shares were collateral security for that note. But that was at most an agreement not operative until the rights of Dr. Moore's creditors in the stock in the hands of his assignee had been extinguished. The shares were pledged as collateral for the two notes originally held by the Manchester bank and taken up by the plaintiff, and that pledge could not be changed without the consent of the assignee for the benefit of the creditors of Dr. Moore. The assignee could redeem the shares in the hands of the plaintiff on paying the amount due on these two notes.

The ruling does not profess to have been made on the pleadings. Under these circumstances they are of importance only so far as the rights of the parties in equity differ from their rights at law.

In *Guild* v. *Butler*, 122 Mass. 498, 501, this court expressly left undecided the question whether the maker of the note there in question could in that action be shown to be a surety. This question without doubt was left undecided because of the cases of *Fentum* v. *Pocock*, 5 Taunt. 192, (cited with approval by this court in *Commercial Bank* v. *Cunningham*, 24 Pick. 270, 275, 276, and in *Fall River Union Bank* v. *Willard*, 5 Met. 216, 221,) on the one hand, and on the other hand the cases of *Pooley* v. *Harradine*, 7 El. & Bl. 431, *Hollier* v. *Eyre*, 9 Cl. & F. 1, *Greenough* v. *McClelland*, 2 El. & El. 424, and *Overend* v. *Oriental Financial Corporation*, L. R. 7 H. L. 348, 360. These cases of *Commercial Bank* v. *Cunningham*, 24 Pick. 270, *Pooley* v. *Harradine*, 7 El. & Bl. 431, *Greenough* v. *McClelland*, 2 El. & El. 424, and *Oriental Financial Corporation* v. *Overend*, L. R. 7 Ch. 142, were cited on the briefs in *Guild* v. *Butler*. See original papers in *Guild* v. *Butler*, 122 Mass. 498, 501. It had been held in *Fentum* v. *Pocock* that the parties to a negotiable instrument could not go behind its terms to show that the parties to it in fact held a relation to each other different from that indicated on the face of the negotiable paper in question. But it was the established law of England before the judicature act, that in

equity the true relationship of the parties to a negotiable instrument could be inquired into and that it could be shown in equity (for example) that the maker of a note was in fact a surety and an indorser the principal; and further, that in such a case, if the indorser who was in fact the principal was dealt with so as to discharge a surety, the maker was discharged. See *Pooley* v. *Harradine*, 7 El. & Bl. 431, and the other cases *supra*.

What is meant by the rule of *Fentum* v. *Pocock* is that the maker of a negotiable note enters into a written contract with all subsequent holders thereof to pay that note as the one primarily liable thereon. That written contract between the maker and the subsequent holder can no more be contradicted by parol than any other written agreement. But on the other hand the rule of *Pooley* v. *Harradine* is that if as between the maker and the indorser the indorser is the one primarily liable on the note and the maker is the surety and this is known to the holder, the holder must in equity have regard to the relation between the maker and indorser in enforcing the contract between himself and the maker. If he interferes with the rights of the maker as between himself and the indorser, the same result ensues as if the maker had contracted with him as surety and the indorser had contracted with him as principal.

We are of opinion that under the allegations of the answer in the case at bar the rights of the defendant in equity should be considered by us. It is alleged that Dr. Moore, who was an anomalous indorser under Pub. Sts. c. 77, § 15, was and was known to be the principal obligor. This allegation is made in connection with an allegation that Dr. Moore was released. He was not released, as will be shown later on. But, as we have said, the ruling made does not purport to have been made on the pleadings, and under those circumstances we think that the equitable rights of the parties should be considered.

We are of opinion that in equity at any rate the true relation can be shown in this Commonwealth. It is not necessary to decide whether the defence is not open at law. The defence of a surety was held to be open at law in this Commonwealth when *Baker* v. *Briggs*, 8 Pick. 122, was decided; and it was held in *Carpenter* v. *King*, 9 Met. 511, that in a common law contract one signing as principal may show that he was a surety.

Coming now to the contentions of the defendant: The first contention made by him is that on the evidence it was a question for the jury whether he signed the note for the plaintiff's accommodation and to be used only if the plaintiff found it necessary to raise money at a bank. The note was given by the defendant for the accommodation of Dr. Moore and not for the accommodation (speaking strictly) of the plaintiff, since it was something stipulated for by the plaintiff as part of the trade. But the question remains which of these two things did the plaintiff stipulate for : Did he stipulate that he should have the note of a third person or did he stipulate that a note signed by a third person should be handed to him to be used only if he found it necessary to raise money at a bank to carry the transaction through ? The question of what the jury were warranted in finding on this point depends on the testimony of Dr. Moore. His testimony was that the plaintiff during the negotiations " wanted to know, as I was in insolvency — previous to that I had made an assignment for the benefit of creditors — if I couldn't get some one to make the new note. He said he didn't care who it was. I told him I didn't know about that, situated as I was, and he said that Arthur C. Moore, my nephew, would be just as good as anybody. I told him I would try to get him." In answer to the question " for what reason he wanted a new note," he said that " he was very short of money, and he might be obliged to use the stock and note in the bank, and he did not want to use it as it was, neither did he think it would be advisable to .present the note with my name as maker on it, I being in insolvency," and that he could not use the old notes because " they were overdue." " He said all he wanted was to get something that he could use at the bank; that he was obliged to borrow money when the draft came due." Nothing more was stipulated for and no condition was made when the note was delivered to the plaintiff. In considering the significance of this evidence it should be added that the defendant then was without means, and was known to the plaintiff to be " a young man, who had worked for Dr. Moore a good deal." On the other hand this note was the only written obligation or statement signed by any one, of the terms on which the $6,200 necessary to take up the two notes in the Manchester bank was

to be repaid to the plaintiff.  On the whole we are of opinion that it has not been shown that the note was not delivered as a note to the plaintiff but was handed to him only for use by him if he found it necessary to raise money in carrying out this transaction.

The defendant's next contention is that the plaintiff is bound to account not only for what he realized from the sale but for what he would have realized from it if it had been conducted with care.  The plaintiff contends that he never realized on the stock, that he offered at the trial to return it to the defendant, and that he .is not bound to account for what was or what with care might have been realized from a sale of it.  It is apparent that there was a change in the value of the stock " after they built the line to the Weirs " in " 1897 or 1898," and that the stock is not worth to-day what the jury were warranted in finding it could have been sold for on January 7, 1897, if it has any value at all now.

What the plaintiff relies on when he makes the contention that he never realized on the stock is his testimony that he went through this form of sale for the purpose of getting the stock transferred into his own name because it then stood in the name of Dr. Moore, who had been in insolvency or was liable to be, and he sold it to have it transferred.  But the jury were not bound to accept this testimony as true.  More than that, there was evidence that he sought to prove the balance due on the two notes taken up by the plaintiff, for which these one hundred and twenty shares were collateral, against the estate of Dr. Moore in the hands of his assignee after deducting the amount realized from the sale of the shares on January 7, 1897.  That is direct evidence that he intended to realize on his security.

The defendant was entitled as surety, on paying the note here sued on, to receive the two notes, and, if the jury found that the plaintiff had undertaken to realize on the stock while the notes were in his hands, to what could have been realized on it had the sale been conducted with care.  A finding that the sale was not conducted with care was abundantly warranted on the evidence.  It was sold in Boston where it was not known, while in Laconia there were four sales of it in the preceding August and one in the preceding November at from $47.50 to $54.25 ; and

there was testimony from those familiar with its value that there was no change in its value down to the date of the sale on January 7, 1897, and that it was then worth $45 to $54.

The plaintiff was not bound to sell the stock pledged as collateral for the notes bought by him. But under the notes he bought he had a right to sell it. If he chose to exercise that right he had to use due care in realizing the value of it, or if he did not use due care he must account to the defendant as surety for what would have been realized had he done so. See *Guinzburg* v. *Downs Co.* 165 Mass. 467, and *Guild* v. *Butler*, 127 Mass. 386, respectively, for the last two propositions.

The plaintiff's agreement not to prove against the estate of Dr. Moore did not release him from the note here sued on. That note was made after Dr. Moore made an assignment for the benefit of his creditors, and could not be proved under the assignment. The agreement not to prove related to the two prior notes held by the Manchester bank and taken up by the plaintiff. But if, after crediting the defendant with the value of the stock which the plaintiff is bound to account for as of January 7, 1897, (when he undertook to sell it,) any balance is due the plaintiff on the note, the defendant can deduct what was lost by this agreement not to prove the two notes, under the familiar rule laid down in this Commonwealth in *Guild* v. *Butler*, 127 Mass. 386.

The defendant next made the contention that the contract was a New Hampshire contract, and that under the statute of New Hampshire put in evidence by him no more than six per cent interest is due under it. It is not necessary to consider whether that is the true construction of that statute, since we are of opinion not only that the contract could have been found to be a Massachusetts contract on the testimony of the plaintiff that Dr. Moore handed to him in Boston the note here sued on, but also that apart from that fact the contract was a Massachusetts contract. We are of opinion that it is a Massachusetts contract even if the note was mailed to the plaintiff as the defendant and Dr. Moore testified. The agreement for the taking up of the two notes was made in Massachusetts; the two notes were to be taken up in Massachusetts by the payment in Massachusetts to the Boston correspondent of the Manchester bank of a fifteen days'

sight draft drawn by it on the plaintiff if the defendant signed and delivered to the plaintiff in Massachusetts this note signed in New Hampshire but dated " Boston." It was held in *Hill* v. *Chase*, 143 Mass. 129, that a similar contract could be found to be a Massachusetts contract. Under the circumstances of this case, for the reasons given in that decision, we are of opinion that the jury should have been instructed that the contract here in question was as matter of law a Massachusetts contract. See also in this connection *Pine* v. *Smith*, 11 Gray, 38 ; *Meyer* v. *Estes*, 164 Mass. 457 ; *Nashua Savings Bank* v. *Sayles*, 184 Mass. 520.

The plaintiff has pointed out that the ruling as to the rate of interest was too favorable to the defendant in that the jury were directed to compute interest at the rate specified in the note to the date of the writ only, in place of to the date of the verdict ; see *Kendall* v. *Equitable Assurance Society*, 171 Mass. 568, where the cases are collected.

A few questions of evidence remain :

The evidence of what was said between Dr. Moore and the defendant was competent not to fix the defendant's rights (those depended upon what was agreed upon between the plaintiff and Dr. Moore) but to show (if it did show it) that the defendant, in delivering the note, acted on what was agreed upon between Dr. Moore and the plaintiff. The evidence of the trade in pursuance of which the note was given was competent to show that the note was a Massachusetts note, and to show that in equity the defendant was a surety and what his rights were as such. The evidence of the agreement between the plaintiff and the assignee of Dr. Moore's estate was competent to show how the plaintiff had dealt with securities to which the defendant was entitled in equity as a surety on paying the debt owed by him to the plaintiff.

The entry must be

*Verdict set aside.*