**STROTHER et al. v. WILKINSON et al.**

No 13125—Opinion Filed May 15, 1923.

Rehearng Denied June 26, 1923.

Application to File Second Rehearing Denied July 17, 1923.

1. **Bills and Notes—"Holder in Due Course" —Payee.**

The payee in a promissory note is not a holder in due course, and in the hands of the payee a negotiable instrument is subject to the same defenses as if it were nonnegotiable.

2. **Evidence — Parol Evidence Affecting Writings—Signer of Note as Surety.**

Parol evidence is admissible as between the original parties to a negotiable instrument to show that one of the makers of the note executed the same as surety, and that his relation as surety was known to the payee notwithstanding his name appears on said note as principal.

3. **Principal and Surety—Release of Surety by Release of Mortgaged Property.**

Under the second subdivision of section 1056, Rev. Laws 1910, a surety is exonerated by the acts of the creditor thereto to the extent to which such surety is prejudiced by such acts, and where the alleged prejudicial act was the release by the creditor of mortgaged property, such release constitutes no defense in the absence of proof that the property released secured some portion of the indebtedness for which plaintiff was liable as surety.

4. **Appeal and Error—Harmless Error—Exclusion of Evidence.**

From an examination of the entire record, it appears that the refusal of the trial court to permit the introduction of testimony as to parol agreement made at the time of the execution of the notes did not prejudicially affect the rights of the defendants, and was harmless error.

Error from District Court, Nowata County; C. W. Mason, Judge.

Action by Sam Wilkinson against H. R. Strother and others on note and mortgage. Judgment for plaintiff, and defendants Strother and L. A. Keys bring error. Affirmed.

Hamilton & Pendleton, Glass & Calvert, and Rainey & Flynn, for plaintiffs in error.

Schwabe, Raymond & Wedell, for defendants in error.

COCHRAN, J. This action was commenced by Sam Wilkinson against H. R. Strother and Barbara K. Strother, H. Greenwood and Della Greenwood, to recover judgment on three promissory notes executed by defendants to plaintiff and to foreclose a real estate mortgage securing the same. Thereafter L. A. Keys and the Commercial National Bank of Nowata were made parties defendant. From the judgment rendered against them Barbara K. Strother and H. R. Strother have appealed to this court.

Defendants H. R. Strother and Barbara K. Strother filed their answers, alleging that Barbara K. Strother was surety for defendants H. R. Strother and H. Greenwood, and that she signed the notes as surety under the terms of a collateral agreement entered into with Sam Wilkinson by which he

agreed that he would not release the mortgage which he had on certain property belonging to H. Greenwood until the indebtedness for which she was surety was paid. H. R. Strother alleged that the notes and mortgages were given to evidence an indebtedness created by H. Greenwood and H. R. Strother jointly, and as partners, and that the plaintiff knew that one-half of the money for which said debt was created was to be used for the benefit of this defendant and the other one-half of it was to be used for the benefit of his codefendant, H. Greenwood, and that by reason thereof Strother became surety for the one-half which Greenwood was primarily liable for. It was further alleged that the notes and mortgages were renewals of former notes and mortgages, and that when the renewal notes and mortgages were made, the Strothers were living in Colorado and the notes and mortgages were sent to them there for their execution; and that, without their knowledge and in violation of the agreement made with Sam Wilkinson, the said Sam Wilkinson left out of the new mortgage certain property belonging to H. Greenwood valued at approximately $15,000, and that, therefore, the said Sam Wilkinson released this property and obtained from Greenwood a mortgage thereon to secure indebtedness from Greenwood to Wilkinson. It is alleged that this was in violation of the express agreement between the parties, and also operated in law as a release of the surety on the note, even though there had been no express agreement.

The Commercial National Bank of Nowata in its cross-petition asked judgment against Strother on a note executed by Greenwood and Strother to it and foreclosure of mortgage lien, which it alleged was inferior to the mortgage lien of the plaintiff.

On trial of the case, the court instructed the jury to return a verdict in favor of the plaintiff and against the defendants H. R. Strother and Barbara K. Strother, and in favor of the Commercial National Bank and against the defendants H. R. Strother and H. Greenwood.

The several assignments of error are based upon the action of the trial court in refusing to permit the defendants to make proof that at the time the original notes and mortgages were executed, and which were renewed by the notes and mortgages sued on, it was agreed between Sam Wilkinson and Barbara K. Strother that the garage property belonging to H. Greenwood would not be released as long as the mortgage on the property of the Strothers remained as security for the indebtedness, and that in violation of such agreement the garage property was omitted from the mortgage securing the renewal notes, without the knowledge or consent of the Strothers, and thereafter a release of the mortgage on the garage property was executed by the plaintiff; and also that the court erred in instructing a verdict for the plaintiff, because the testimony showed that Barbara K. Strother signed the notes in controversy as surety, and that the release of the garage property without her consent had damaged her to the extent of the value of the property released.

It is first contended by the plaintiff that the action of the trial court in refusing to admit the testimony offered and instructing the jury to return a verdict for the plaintiff was correct because section 4169, Rev. Laws 1910, provides the method by which a negotiable instrument is discharged, and that a discharge cannot be effected in any other way except as provided in that section. It is contended by the plaintiff that Wilkinson was the holder for value in due course of the note, although he was the payee therein. We are not unmindful of the authorities holding that a payee in a promissory note may be the holder in due course, but this court in the case of the First Nat. Bank of Poteau v. Allen et al., 88 Okla. 162, 212 Pac. 597, in the syllabus announced the contrary holding in the following language:

"Under the Negotiable Instruments Law (section 4102, Rev. Laws Okla. 1910), the payee in a promissory note cannot be a holder in due course."

The plaintiff contends that even though the payee is not considered the holder in due course, the provisions of section 4169, Rev. Laws 1910, have been held to apply, and furnish the only grounds for discharge of a negotiable instrument. Oklahoma State Bank of Sayre v. Seaton, 69 Okla. —, 170 Pac. 477; Cleveland Nat. Bank v. Bickel et al., 59 Okla. 279, 159 Pac. 302.

Section 4108, Rev. Laws 1910, provides:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable."

As we have held that in the hands of the original payee the note is not in the hands of a holder in due course, the notes in the instant case, under the plain provisions of the above statute, are subject to the same defenses as if the notes were nonnegotiable, and are not controlled by the provisions of section 4169. The cases of Oklahoma State Bank of Sayre v. Seaton and Cleveland Na-

tional Bank v. Bickel, supra, in so far as the same are in conflict with this holding, are overruled. The plaintiff in this case not being the holder in due course, and the notes sued on therefore being subject to the same defenses as if they were nonnegotiable, the law of suretyship is applicable.

Section 1051, Rev. Laws 1910, provides:

"One who appears to be a principal, whether by the terms of a written instrument, or otherwise, may show that he is in fact a surety, except as against persons who have acted on the faith of his apparent character of principal."

Section 1056, Rev. Laws 1910, provides:

"A surety is exonerated:

"First: In like manner with a guarantor.

"Second: To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or,

"Third. To the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do."

We are of the opinion that, since the evidence shows that Barbara K. Strother executed the notes in controversy as surety, it was competent to prove that the plaintiff had prejudiced the surety by acts which would naturally prove injurious to the remedies of the surety, and since one of the rights of the surety is to be subrogated to the rights of the principal as to the rights of the payee as against the principal, and the property of the principal held by the payee as security for the note of the plaintiff in this case had been released, the surety's rights would have been prejudicially affected; but in this case it does not appear that the refusal of the trial court to permit the introduction of testimony offered, or the instructed verdict deprived the defendant of the rights which we have determined she had as surety. The property belonging to Greenwood, the release of which is urged as a defense in this case, is referred to as the garage property, and it is conceded that this property was not covered by the mortgages which were executed by Strother and Greenwood at the time the notes sued on in this case were executed, but the contention of the defendant is that these notes were renewals of a prior indebtedness which was secured by the garage property. In order for the release of this property to be available to the defendant, it must appear that the garage property secured some part of the indebtedness for which the Strothers

were liable and which was renewed by the notes in controversy. If this garage property never secured any part of that indebtedness, then its release would not prejudicially affect the rights of the surety, as such surety would have been subrogated to the rights of the payee only to the property securing the indebtedness. Neither the testimony introduced nor the testimony offered shows in any manner that the notes sued on were renewals of the indebtedness secured by the garage property. In the testimony of H. R. Strother (C.-M. 220) we find the following:

"Q. The question was—You may state whether or not, Mr. Strother, these notes and mortgages which you signed at that time were renewal notes and mortgages of the existing indebtedness? A. Yes, sir; they were. Q. You may state whether or not, at the time that you signed these notes and mortgages, on or about the 6th day of July, 1920, you attached and annexed conditions upon which they should be delivered to the plaintiff, Sam F. Wilkinson?"

An objection being sustained, the following was stated to be the testimony offered:

"The defendants, H. R. Strother and Barbara K. Strother, offer to prove by this witness that at the time the notes and mortgages above referred to were signed by this witness and of the defendant, Barbara K. Strother on or about the 6th day of July, 1920, including the individual property of this witness and of the defendant, Barbara K. Strother, that this witness made it a condition precedent to the delivery of said notes and mortgages to the plaintiff, Sam F. Wilkinson, that the plaintiff, Sam F. Wilkinson, would again agree with this witness that the mortgages on the individual property of Harve Greenwood would not be released as long as the mortgage on the individual property of this witness and of the defendant, Barbara K. Strother, was not released."

On page 271, C-M., of H. R. Strother's testimony, we find the following:

"Q. Mr. Strother, state whether or not, if at the time that you signed the mortgages identified as plaintiff's exhibits numbers four, five, six, and seven, they were given as renewal papers to other mortgages which had, prior to that time, been given by you and the other parties to the plaintiff in this case? A. Were these mortgages renewals? Q. Yes, sir? A. Yes, sir. Q. I will ask you if at the time that you signed these instruments, marked plaintiff's exhibits numbers four, five, six, and seven, any information was borne to you by the plaintiff in this case that there was any change in the form of the security given in the renewal mortgages from the form in the mortgages for which they were given as renewals?"

Objection was sustained to this question, and no offer of proof made. On pages 211 and 212 we find the following testimony:

"Q. Mr. Strother, referring to the middle of the year 1918, during July of 1918, did you give any real estate security for some of this indebtedness? A. Yes, sir. Q. At whose request did you do that? A. Mr. Wilkinson's. Q. What real estate security did you give? A. It is the—first there was the security given on the property that we were occupying at the time with the garage, located on the corner of Cherokee and Pine streets, Mr. Greenwood's individual property, and my individual property across the street from the court house and a little bit to the south, the old General Motor Car Company building. Q. Mr. Strother, I hand you this instrument which has been marked as 'Defendant's Exhibit A' and will ask you to state what that is? A. It is a letter to myself from Mr. Wilkinson. Q. What is the date of it? A. December 3, 1918. Q. Does it refer to this indebtedness? A. Yes, sir."

The letter referred to is as follows (C.-M. 214-5):

"Nowata, Oklahoma,
"December 3, 1918.

"Mr. H. R. Strother,
"214 East 2 St.
"Tulsa, Okla.

"Dear Henry:

"I am herewith enclosing you two notes which are renewal notes, one for $3,500.00 and one for $4,380.00. These are due December 6th. Mr. Greenwood and his wife have already signed the two notes and one mortgage, as you can see, and have acknowledged it. You and your wife sign the two notes and mortgages above where Mr. Greenwood and wife signed it and acknowledge same before a notary public in Tulsa county and mail back to me at once.

"The interest for 4 months on the
two notes is ------------------------$210.13
"I will take for recording the mortgage --------------------------  1.25
"And for revenue stamps-----------  1.58
                                    --------
"Making a grand total of----------- $212.86

"Now Harry these notes are carried in the city and it is necessary for us to have them in the city by the 6th, so please attend to them and mail back by return mail.

"This is a real estate loan entirely and the national banking laws do not permit a bank to loan over 50 per cent. of the value of the real estate, and really do not want a bank to loan on real estate at all.

"I am including your 50 acres of land out on the river in this mortgage and your lots where the lumber company is and 35 acres of land that you and Harve own out west of town. Harve has heretofore put up as collateral on yours, and his obligations, a mortgage to the amount of $12,000.00 on his Auto Mechanic building. You have put up a mortgage on the General Motor Company building for $6,000.00, so by putting in the lots 5 and 6, block 25, and your 50 acres of land on the river, it will equalize the amount of security that has been put up by Harve Greenwood before and makes it about a fair division of security between yourself and Harve. Do not fail to get this back to me immediately, and I will mark the other notes paid and mail them back to you.

"I am, with kind regards,
              "Very truly yours,
                    "Sam F. Wilkinson,
                           "President.

"SFW|K."

"Q. Mr. Strother, what action did you take on this letter when you received it from Mr. Wilkinson? A. I advised with Mrs. Strother, and she did not approve of mortgaging her farm, her allotment, so we came up to Nowata to see what could be done about it, and went down and talked with Mr. Wilkinson, and told him that she objected to putting in her farm, and asked him if there was any other kind of security that we could offer, and in the course of the matter as it was, I suggested, I think, proposing that Mr. Keys would sign the note, and he said that would be perfectly satisfactory. I went to Mr. Keys and explained about it to him, and he said he would go and see Mr. Wilkinson; he later told me that, to go ahead and sign the order— Q. After you talked to Mr. Keys, what further did you do? A. I signed the mortgage. Q. You and your wife? A. Yes, sir. Q. Did you have a conversation with Mr. Wilkinson at the time the mortgage was delivered to him? A. I presume I did; we was in conversation two or three or four times possibly during this. Q. Tell the jury what the conversation was between you and Mr. Wilkinson, in these three or four different sections of your conversation, at the time you executed the mortgage on December 6, 1919? A. I explained the objection we had to putting in the farm on this security, as security for this mortgage, giving a mortgage on it as security for the note, and when it was finally decided that we would sign and enter this, it was with the distinct understanding and agreement—"

An objection to this question was sustained, and the testimony offered is set out on pages 217 to 219, inclusive, which recites the agreement which is the basis of the defense in this case, in effect, that on the 6th day of December, 1918, Barbara K. Strother signed the note and mortgage on her individual property under an agreement that Wilkinson would not release as security the mortgage on the garage property.

From the foregoing testimony it nowhere appears that the garage property was ever mortgaged to secure any notes on which

Barbara K. Strother and H. R. Strother were sureties, and, such being the condition of the record, the testimony does not show that they were in any manner prejudiced by reason of the release of the mortgage on this property.

What has been said above applies also to the action of the court in refusing the offered testimony in regard to the agreement made at the time Barbara K. Strother and H. R. Strother signed the notes on December 6, 1918, and the notes dated July 6, 1920. The action of the trial court in declining this testimony was justified in view of the fact that the defendants introduced the following mortgages:

Mortgage from Greenwood and wife to Wilkinson on the garage property dated June 27, 1919, for $4,260.

Mortgage from Greenwood and wife on the garage property dated April 22, 1920, for $4,260.

Mortgage from Greenwood and wife on the garage property dated June 27, 1920, for $4,260.

Mortgage from Greenwood and wife on the garage property dated September 4, 1920, for $5,000

—and the release, which is the basis of defense, executed on May 11, 1921, and which releases the above recorded mortgages.

The following mortgages were also introduced in evidence:

Mortgage dated December 6, 1918, signed by Greenwood and wife and H. R. Strother and Barbara K. Strother, securing two notes, one for $3,500, and one for $4,380. This mortgage did not cover the garage property.

Mortgage dated April 5, 1919, securing a note for $3,500, and one for $4,380, signed by the same parties, but not covering the garage property.

Mortgage dated July 5, 1920, securing a note for $4,380, and signed by the same parties, but not covering the garage property.

Mortgage dated July 6, 1920, securing note for $3,500, signed by the same parties, but this mortgage did not include the garage property; and

Mortgages sued on in this case, executed in January, 1921, signed by the same parties and securing three notes, one for $4,260, one for $3,500, and one for $4,380. This mortgage did not cover the garage property.

It is thus seen that these mortgages which were introduced in evidence show that at the time the alleged agreement was made on December 6, 1918, and on July 6, 1920, the notes were secured by mortgages, but these mortgages did not include the garage property; therefore, the refusal of the trial court to permit the introduction of testimony tending to show that it was agreed on these

occasions that Wilkinson would not release the garage property as security for this indebtedness so long as the individual property of Barbara K. Strother secured the same would not prejudice the rights of the Strothers, as the mortgages given at that time did not cover the garage property, and the testimony does not show at any place that the Strothers were liable on the notes secured by the garage property or that the release of this mortgage executed on May 11, 1921, released the mortgages securing any indebtedness for which the Strothers were liable.

The remaining contention of the defendants is that the plaintiff perpetrated fraud on the Strothers at the time the notes and mortgage in controversy were executed by leaving out of the mortgage the garage property, inasmuch as the same had been included in the previous mortgages. In this connection it is only necessary to say that there is no proof in the record in any manner tending to show any fraud on the part of the plaintiff, and, further, that the mortgages which were introduced in evidence by the defendants and which it is claimed were renewed by the mortgages in controversy, did not cover the garage property, and, hence, there could have been no fraud in omitting property which had not originally been included in the mortgages.

The judgment of the trial court is affirmed.

JOHNSON, C. J., and McNEILL, KENNAMER, NICHOLSON, and BRANSON, JJ., concur.