FIRST NATIONAL BANK OF MISSOULA, APPELLANT, *v.* HOLDING ET AL., RESPONDENTS.

(No. 6,730.)

(Submitted April 14, 1931. Resubmitted September 30, 1931. Decided October 29, 1931.)

[4 Pac. (2d) 709.]

*Mr. Walter L. Pope* and *Mr. J. C. Garlington,* for Appellant, submitted an original brief and one on re-argument; *Mr. Pope* argued the cause orally.

*Mr. Lloyd L. Wallace* and *Mr. E. C. Mulroney,* for Respondents, submitted a brief; *Mr. Mulroney* argued the cause orally. *Mr. E. G. Toomey,* of Counsel, filed a brief on resubmission of

the cause in answer to certain questions propounded by the court, he arguing them orally.

MR. JUSTICE FORD delivered the opinion of the court.

This is an action upon a promissory note dated June 30, 1922, for the principal sum of $16,958.50, executed by C. A. Stone, V. L. Holding, William Irvine and J. H. Cline, payable upon demand to the Missoula Trust & Savings Bank, and by it assigned to the First National Bank of Missoula, plaintiff herein, upon the consolidation of the two banks in February, 1927. The action was originally commenced against all four signers of the note; Stone was not served, and the action was dismissed as to Irvine, who pleaded his discharge in bankruptcy, and the action proceeded against Holding and Cline, hereafter referred to as the defendants.

The complaint is in the usual form. The answer denies certain of the allegations of the complaint, and, in addition, alleges that the note in suit was a renewal of a note for a like amount executed by the same parties on June 30, 1921; that on that date the Missoula Trust & Savings Bank, payee in the note, was the owner and holder of ten promissory notes of various individuals aggregating in amounts then due the sum of $16,958.50, which was the amount for which the original note of the defendants was given; that on the date last mentioned, the Missoula Trust & Savings Bank delivered the ten notes to the First National Bank of Polson, to be by it collected "and with the express agreement that the principal and interest upon the respective notes as the same became due, should in each and every instance be collected by said The First National Bank of Polson, if possible, and the proceeds of such collection remitted to the said Missoula Trust & Savings Bank, and in case any of said notes could not be collected, then return such uncollected notes to the Missoula Trust & Savings Bank. That on or about the second day of July, 1921, there was left, but without consideration for the execution thereof, with said Missoula Trust & Savings

Bank a note bearing date of June 30, 1921, for $16,958.50, signed by the four defendants named in this action as collateral to the obligation of said The First National Bank of Polson to collect said ten notes and remit the proceeds thereof to the Missoula Trust & Savings Bank, or in case said The First National Bank of Polson failed to collect said notes and interest, or some of them, then to return said uncollected notes to said Missoula Trust & Savings Bank and remit the proceeds of any collateral notes to said Missoula Trust & Savings Bank. That the note described in the plaintiff's complaint is a renewal of said note of June 30, 1921." It is alleged that none of the proceeds of the ten notes were ever delivered or transmitted by the Polson bank to the Missoula bank, and that in July, 1924, after the Polson bank had gone into the hands of a receiver, the Missoula bank filed with the receiver a claim based upon the ten notes, which claim was disallowed by the receiver; that in September, 1924, the Missoula bank commenced an action in the district court of Missoula county against the Polson bank and the receiver, hereinafter referred to as cause No. 9607, seeking to recover of and from the defendants, "among other things, the sum of $16,958.50, together with interest thereon from and after the 30th day of June, 1921, for the alleged conversion of the ten promissory notes," referred to above; that the action resulted in a compromise and settlement, whereby three of the notes were returned to the Missoula bank, and, upon the trial before the court, a judgment was entered finding that the three notes were the only notes of the ten listed in the possession of the defendants in that action, that plaintiff be authorized to accept the same, and that plaintiff's prayer for a money judgment be denied. It is further alleged that the effect of the judgment was to discharge the note upon which this action was brought and the obligation represented thereby. Issue was joined by reply. Trial by jury resulted in a verdict for defendants; judgment was accordingly entered, from which plaintiff appeals.

Numerous specifications of error are urged by plaintiff as grounds for the reversal of the judgment, but in our opinion the determinative question is whether defendants can rely upon and prove the contemporaneous agreement set up in their answer, which the evidence discloses to have been oral in character.

Dean Wigmore, in his treatment of the parol evidence rule as applied to negotiable instruments, says: "What is the situation, then, of parties who wish to employ a negotiable instrument for the sake of some one or more specific attributes, but wish also to *modify for their own case some of the other generic consequences ordinarily implied* as a part of the whole? They cannot specify these manifestations in the instrument without destroying all its negotiable qualities, including those which they desire to secure. On the other hand, by making no specific modification, they will be fixed with consequences which they do not desire. * * * The law, then, it is plain, has recognized the dilemma. It perceives that parties must constantly wish to employ a negotiable instrument for the sake of one or more of its special attributes while discarding others; it concedes that commercial transactions are variant in their exigencies, while the normal incidents of a negotiable instrument are fixed; and it does not force parties into the alternative of employing either all or none of them. It therefore concedes that by special agreement the parties may discard or alter a specific implied incident, so far as its operation would affect themselves." (5 Wigmore on Evidence, 2d ed., sec. 2443, p. 335.) And referring to agreements affecting the express terms of the instrument, the learned author says: "An agreement between one co-maker and the payee, *to hold the former as surety only,* seems at first sight to be a mere condition qualifying the face of the instrument, and therefore ineffective; but, as in the case of accommodation paper, it may be that the negotiation of the instrument requires several parties having primary liability; hence the surety would have to appear as a co-maker and not as a drawer, and the suretyship agreement would have to be ex-

534

trinsic. Such an agreement is generally given effect." (Id., sec. 2444, p. 337.)

"Suretyship may be declared by parol. * * * One who signs under seal a promissory note, apparently as maker, can, when sued thereon by the payee, show by parol that he is surety only, and that at the time the note was executed the payee had knowledge of this fact." (4 Jones' Com. on Evidence, 2d ed., sec. 2850.) "In accordance with the rules applicable to writings, it is permissible to show by parol or extrinsic evidence, as between the original parties or those with notice, the true capacity or legal relation of the parties to a negotiable bill or note. Thus it may be shown that a signer of a note is, in reality, a surety, and that this fact was known to the plaintiff." (Id., 3019; see, also, sec. 8196, Id.)

"In the United States, we think, the weight of authority is in favor of allowing evidence to show that one of the joint promisors signed as surety, and that this was known to the payee or indorsee when he took the instrument; this is said to proceed upon the theory that suretyship is a fact collateral to the contract, rather than a part of it, and may therefore be shown ore tenus." (2 Daniels on Negotiable Instruments, 6th ed., 1508.)

Such proof does not vary, alter, or contradict the terms of the written instrument, but simply proves a fact outside of and beyond its terms. It is a collateral fact to the written instrument and no part of it, and the fact may be shown for the purpose of establishing the true relationship of the parties.

The testimony of defendants tended to show that when the oral agreement was entered into, and at the time the note in suit was made, the Missoula bank knew that the makers were only sureties, and we can see no possible objection to allowing them to plead and prove the truth. From the evidence, the jury believed that the payee had full and complete notice that they were sureties as though the fact had been set out in detail in the instrument itself. In this situation of the parties, it was proper to permit defendants to show by parol

evidence the contemporaneous oral agreement of suretyship. The following cases support the conclusion we have reached: *Campbell* v. *Hughes*, 155 Ala. 591, 47 South. 45; *Vestal* v. *Knight*, 54 Ark. 97, 15 S. W. 17; *Pimental* v. *Marques*, 109 Cal. 406, 42 Pac. 159; *Grafton Bank* v. *Kent*, 4 N. H. 221, 17 Am. Dec. 414; *Hubbard* v. *Gurney*, 64 N. Y. 460; *Jennings* v. *Moore*, 189 Mass. 197, 75 N. E. 214; *Trammell* v. *Fertilizer Works*, 121 Ga. 778, 49 S. E. 739; *Rose* v. *Williams*, 5 Kan. 483; *Kaufman* v. *Barbour*, 98 Minn. 158, 107 N. W. 1128; *First Nat. Bank* v. *Burney*, 90 Neb. 432, 133 N. W. 647; *Vandeventer* v. *Davis*, 92 Ark. 604, 123 S. W. 766; *Martinsburg Bank* v. *Bunch*, 212 Mo. App. 249, 251 S. W. 742; *Strother* v. *Wilkinson*, 90 Okl. 247, 216 Pac. 436; *Pope* v. *Hoefs*, 140 Minn. 443, 168 N. W. 584; *Haywood* v. *Russell*, 182 N. C. 711, 110 S. E. 81.

Here plaintiff occupies no better position than that occupied ██ by the Missoula Trust & Savings Bank. At the time it acquired the note, it had full knowledge of all the facts surrounding the entire transaction and the conditions under which defendants executed the note. Indeed, counsel for plaintiff concede that "the First National Bank of Missoula stepped into the shoes of the Missoula Trust & Savings Bank. Its rights are those of the latter, no greater and no less.".

The evidence shows that upon the insolvency of the Polson Bank the Missoula Trust & Savings Bank filed a claim with the receiver of the insolvent bank, seeking a preference for the amount of the ten notes, and, upon its rejection, suit was filed, action No. 9607, and pursuant to an agreement between the parties, to which the makers of the note, defendants here, did not consent, judgment was entered under which plaintiff was authorized to accept three of the original ten notes, and its prayer for a money judgment was denied. It is contended by defendants that this settlement of cause No. 9607 operated as an exoneration of their liability.

The jury, by special findings, determined that defendants signed the note in suit as sureties, to insure the faithful per-

formance of the obligation of the Polson bank to collect the ten notes or return those uncollected to the Missoula bank. Under our statutes, a surety has all the rights of a guarantor. (Sec. 8202, Rev. Codes 1921.) A surety is exonerated: "1. In like manner with a guarantor; 2. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or, 3. To the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do." (Id., sec. 8201.) A guarantor is exonerated, except so far as he may be indemnified by the principal, "if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in anywise impaired or suspended." (Id., sec. 8188.)

From what has been said, it is clear that the action of the Missoula Trust & Savings Bank, in settling and compromising with the Polson bank and the receiver, discharged the obligation of the Polson bank, and thus impaired or suspended its rights and remedies against the principal, without the consent of the sureties, and, in consequence, the sureties are exonerated. (See *United States Building & Loan Assn.* v. *Burns, ante,* p. 402, 4 Pac. (2d) 703.)

It is argued by counsel that there is not any evidence to support the allegations of the answer, and that the judgment must be set aside. No useful purpose would be subserved in setting forth the evidence. We have carefully examined the record and find ample substantial evidence to support the findings of the jury. The evidence as to the oral agreement and the circumstances surrounding the entire transaction, which resulted in the execution and delivery of the note, is conflicting. The jury found for the defendants. Evidence of the contemporaneous agreement was properly received, and we will not disturb the jury's findings. (*Staff* v. *Montana Petroleum Co.,* 88 Mont. 145, 291 Pac. 1042;

*Chowning* v. *Madison Irr. Co.,* 84 Mont. 494, 276 Pac. 946; *Robinson* v. *F. W. Woolworth Co.,* 80 Mont. 431, 261 Pac. 253.)

But counsel contend that the liability of the defendants ▉ must be determined under the provisions of the Negotiable Instruments Law, and, since the evidence shows that the note has not been discharged by any of the methods enumerated in section 8526, Revised Codes of 1921, it is entitled to judgment. The contention cannot be sustained. The Negotiable Instruments Law deals only with negotiable instruments as such, and makes no reference to contracts of suretyship. While it is true that the note in suit is negotiable on its face, yet when considered in connection with the parol agreement entered into at the time of the execution of the note, which may properly be inquired into, in an action between the makers and payee or a holder having knowledge of the facts, the note is but an incident to the main transaction and obligation, viz., the agreement of the Polson bank to collect the ten notes and remit the sums collected or return to the Missoula bank any of such notes not collected.

Under the allegations of the answer, the proof offered in support thereof, and the findings of the jury, the obligation of the Polson bank was not founded upon the promissory note made by defendants. Its obligation was founded upon a separate and distinct agreement to collect the ten notes, with interest, and remit the proceeds to the Missoula bank or to return all uncollected notes. Had it done so, its obligation, as well as that of defendants, would have been discharged. The liability of the defendants to the payee of the note and to plaintiff was coextensive with that of the Polson bank; no greater and no less. In other words, had defendants obtained from the Polson bank the ten notes and returned them to the Missoula bank, their obligation and liability would have been discharged. These considerations are sufficient to bring the case within the law of suretyship, and the rights and liabilities of the parties are controlled by that

law and not by the Negotiable Instrument Law. If counsel's position is correct, it would follow that, had the Polson bank fulfilled its obligation to the Missoula bank and plaintiff had refused to return defendants' note, it could still maintain this action, and defendants would not be permitted to show the circumstances under which the note was given nor that the obligation of the Polson bank had been discharged, for the reason that the promissory note could be discharged only in one of the methods enumerated in section 8526, supra. This cannot be, and conclusively demonstrates the fallacy of plaintiff's position.

The conclusion we have reached does not conflict with the decision of this court in the case of *Merchants' Nat. Bank* v. *Smith,* 59 Mont. 280, 15 A. L. R. 430, 196 Pac. 523. In that case, the accommodation party had signed a note with the maker; there was no contemporaneous agreement of suretyship, as here, and the court correctly held that the rights and liabilities of the accommodation maker were controlled by the provisions of the Negotiable Instruments Law. There the obligation of the principal, for which the accommodation maker stood as surety, was fixed and determined by the terms of the note itself, while here the note is but an incident to the contract of suretyship; the obligation of the Polson bank was upon an entirely separate contract, and had no relation whatever to the note.

We have carefully considered other specifications of error urged by plaintiff and find them to be without merit.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, ANGSTMAN and MATTHEWS concur.

Rehearing denied November 17, 1931.