[Civil No. 1159.    Filed March 25, 1911.]

[114 Pac. 561.]

THE ARIZONA POWER COMPANY, a Corporation, De-
fendant and Appellant, v. J. A. KELLAM, Plaintiff and
Appellee.

1. CORPORATIONS—ACT OF AGENT—AUTHORITY—EVIDENCE—SUFFICIENCY.
Where, in an action against a corporation for the use of a freighting
outfit, the answer admitted the hiring of the outfit and defendant's
manager, and plaintiff testified to the hiring, the conflict in the tes-
timony being as to the terms of the contract, a contention that a
verdict for plaintiff was not authorized on the ground that there
was no evidence of authority to bind defendant was of no merit.

2. EVIDENCE—ADMISSIBILITY—DOCUMENTARY EVIDENCE.—In an action
against a corporation on a contract, whereby it hired a freighting
outfit from plaintiff, there was evidence that defendant's manager
who contracted for defendant, instructed defendant's team superin-
tendent to value the outfit, and that he instructed defendant's time-
keeper to make a memorandum of the outfit.    *Held*, that a memo-
randum made by the timekeeper, showing, among other things, a
certain chain claimed by plaintiff not to have been returned as

required by the contract, was admissible as against the objection that the team superintendent had no authority to bind the company.

3. TRIAL—OBJECTIONS TO EVIDENCE—EVIDENCE ADMISSIBLE IN PART.— Where a document is in part relevant and material and competent evidence, but contains other matter not competent, ·the attention of the trial court must be directed to the incompetent part before error can be predicated on the admission of the document as a whole.

4. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.— Though a document was improperly admitted, it was harmless where it was merely cumulative evidence of an undisputed fact.

5. CONTRACTS—PLEADING—EVIDENCE—ADMISSIBILITY UNDER PLEADINGS. In an action against a corporation on a contract for the hiring of a freighting outfit belonging to plaintiff, the answer admitted an agreement for the use of the outfit, and denied that there was any contract in existence between plaintiff and defendant "at the time plaintiff's horses died as alleged in the complaint whereby defendant was to pay" anything for the same. *Held*, that, under the answer, evidence was not admissible to show that the contract had terminated prior to the time when one of the horses died.

APPEAL from a judgment of the District Court of the Fourth Judicial District, in and for Yavapai County. Edward M. Doe, Judge. Affirmed.

The facts are stated in the opinion.

Le Roy Anderson, for Appellant.

If the plaintiff declared in *assumpsit* the defendant may, under the general issues, show that no such contract as that declared on was ever made. A general issue is proper and under the same the defendant may show that another and different agreement was actually made. *Washington Steam Packet Co.* v. *Sickles,* 10 How. (U. S.) 419, 13 L. Ed. 479; *Loughridge* v. *Thompson,* 20 Ala. 828; *Brundred* v. *Smithman,* 188 Pa. 416, 41 Atl. 648. Under a general or special denial the defendant, upon principle and authority, is at all times at liberty to prove anything tending to show that the plaintiff's allegations are untrue. 9 Cyc. 734. He may introduce evidence to disprove wholly or in part any fact which the plaintiff must establish to show a cause of action. 9 Cyc. 734, note 83. The defendant is always allowed under the general issue to show in any manner that the contract alleged was not the agreement by the parties, and this cannot

be done more effectively than to prove an entirely different contract and promise of defendant. *Young* v. *Jones,* 8 Iowa, 219; *McGill* v. *Hall* (Tex. Civ. App.), 26 S. W. 132; *McKenna* v. *McKenna,* 118 Ill. App. 240; *Mail & Express Co.* v. *Wood,* 140 Mich. 505, 103 N. W. 864; *Rodman* v. *Guilford,* 112 Mass. 405. The evidence in this case fails entirely to establish or support the contract as alleged by plaintiff in his pleadings, and the verdict rendered and given in this case is not sustained by any competent evidence, for it was a suit upon an express oral contract with a corporation and the specific terms of the contract are stated, and plaintiff is limited to recovery by competent proof of his express contract. *List & Sons Co.* v. *Chase,* 80 Ohio St. 42, 88 N. E. 120, 17 Ann. Cas. 61; *Simonton* v. *Kelly,* 1 Mont. 363; *Paris* v. *Strong,* 51 Ind. 339. "A person who deals with an agent or officer of a corporation is bound to know their powers and the extent of their authority, for corporations like natural persons are bound only by the acts and contracts of their agents done and made within the scope of their authority." *Alexander* v. *Cauldwell,* 83 N. Y. 480, 5 Morr. Min. Rep. 650. And there being no competent evidence to prove the authority of Masson, this case fails upon this point alone.

E. S. Clark and J. E. Russell, for Appellee.

Written evidence may be admitted for what it is worth, to establish the terms of an oral contract. *Simpson* v. *Kimberlin,* 12 Kan. 579. The plaintiff sued on the parol contract and introduced the memorandum merely to aid in proving what that parol contract was. The memorandum was allowed for what it was worth as tending to prove the terms of the parol contract. *Cohen* v. *Berlin etc. Co.,* 166 N. Y. 292, 59 N. E. 906; 3 Ency. of Ev. 521; *Lathrop* v. *Bramhall,* 64 N. Y. 365. Defendant had not pleaded a different contract, or a modification of the contract as alleged by plaintiff, and the court correctly held that under the pleadings it was inadmissible. "The rule is that a general denial in an answer simply puts the plaintiff upon proof of all matters necessary to make out his cause of action, but does not authorize the defendant to prove any new matter constituting an affirmative defense. Such new matter or matter in confession and

avoidance, as it is known at common law, must be specially pleaded, and cannot be introduced in evidence under a mere denial." 9 Cyc. 734; *Winston* v. *Taylor,* 28 Mo. 82, 75 Am. Dec. 112; *Gill* v. *Rice,* 13 Wis. 549. "Evidence in a case cannot be considered on an issue not presented by the pleadings." 39 Am. Dig., p. 2622, sec. 1237. "One cannot establish by evidence a defense not pleaded." 39 Am. Dig., p. 2639, sec. 1261. A principal cannot deny his liability on contracts of employment made by one whom he had held out as possessing authority to make such contracts. 31 Cyc. 1398, and note 80; *Mook* v. *Parke,* 9 Misc. Rep. 90, 29 N. Y. Supp. 32. The plaintiff was entirely within his rights in relying upon the apparent authority of Masson, not only to make the contract for the company, but also to bind it to pay the consideration agreed upon.

KENT, C. J.—The complaint of Kellam alleged that the plaintiff at the special instance and request of the defendant delivered and turned over to the defendant a certain freighting outfit which was accepted by the defendant as in good order and condition, and that the defendant agreed to pay the plaintiff for the use of the freighting outfit at certain specified rates for each span of horses and for a wagon so delivered. The complaint further alleged that it was agreed between plaintiff and defendant that the contract for the use of the freighting outfit should continue until terminated upon notice by either party and until the expiration of thirty days after the giving of such notice; that it was also agreed and understood that, in case any of the horses so hired should die or be killed while employed under the contract, the defendant should pay the plaintiff the sum of $165 per head for each horse; that, with the exception above noted, the freighting outfit should be returned to the plaintiff at the expiration of its service in as good order and condition as when received, and, in case any part thereof should be lost or destroyed, it should be replaced by the defendant or paid for at its just and reasonable value. The complaint further alleged that during the pendency of the contract one of the horses died, and that the defendant was indebted to the plaintiff in the sum of $165, the agreed value of said horse, and was further indebted

to the plaintiff for various sums for the use of said freighting
outfit as agreed upon by the parties, including the use of the
wagon, for repairs, and for a chain that was not returned with
the outfit; and prayed judgment for the sum of $539.99.   The
defendant answered, admitting that it had rented of the plain-
tiff a freighting outfit, for which it was to pay a certain
amount per month for the horses and for a wagon for such
time as the same was used by the defendant; denied that the
contract was to be terminated on thirty days' notice; denied
that it was agreed that the defendant should pay the plaintiff
the sum of $165 per head for any horses that should die or be
killed, or that there was any contract in existence at the time
when the plaintiff's horse died whereby the defendant was to
pay $165 for the same, or any other sum; alleged that the
death of the horse was owing to the negligence or carelessness
of the plaintiff or his agents, and denied that the defendant
was indebted to the plaintiff in any sum for the said horse;
denied that the freighting outfit was to be returned at the
expiration of its service in as good condition as when received,
or that the defendant was to replace any part lost or de-
stroyed.   The answer admitted that the defendant had used
a certain number of horses for a certain length of time and
the wagon for a certain length of time as therein specified;
admitted that it owed the plaintiff the sum of $302 for the
use thereof, but no more, and tendered the said $302 in full
satisfaction of its debt; denied that it was responsible for the
condition of the wagon or for the repairs thereon, or respon-
sible for the loss of the chain claimed by the plaintiff.   The
case was tried to a jury and a verdict rendered for the full
amount of the plaintiff's claim, upon which verdict judgment
was entered.   From this judgment and an order denying a
motion for a new trial the defendant has appealed.

Appellant claims that the verdict is not sustained by the
evidence, in that the plaintiff offered no sufficient evidence
of any authority from the defendant or anyone to enter into
any such contract as alleged by the plaintiff.   The agreement
in question was an oral one made by the plaintiff with one
Masson, who was acting as the general manager of the defend-
ant company.   It is claimed by the appellant that, inasmuch
as there is no evidence showing any direct authority in Masson

to bind the defendant company, the verdict was not justified. We do not think this position is tenable. The answer admits that an agreement was entered into on behalf of the company for the rental of this freighting outfit; that the company obtained the outfit, used it, and was indebted to the plaintiff for $302 therefor, which sum the defendant tendered to the plaintiff. The only agreement in this behalf was the oral agreement between the plaintiff and Masson, testified to by both Masson and the plaintiff. The plaintiff's testimony was that the agreement covered not only the use of the horses and the wagon, but the value of any horse that should die or be killed, and other items which Masson testified were not included in the agreement. The question as to what was or was not included in the agreement was a matter in dispute, but the right of Masson to make the agreement on the part of the company is conceded by the answer and sufficiently appears in the testimony. The claim, therefore, of the appellant that there is no evidence of any authority from the defendant to anyone to enter into the contract is without foundation.

It is further contended that the trial court erred in admitting in evidence an alleged memorandum not signed by any of the parties to the suit, and, as claimed by the appellant, not signed by anyone authorized to bind the appellant, or not made by anyone with authority from the defendant concerning any of the issues in the case. The main issue in the case was whether or not the defendant was obligated to pay the plaintiff the sum of $165 for a horse that died or was killed while in the defendant's service and during the life of the contract. The plaintiff testified that the agreement as stated by Masson was: ''We return your outfit in as good condition as when we receive it outside of the natural wear and tear, and, in case any horse dies or gets killed while on the work, we pay for the value of the horse''; that Masson told him that, if the outfit was satisfactory to his team superintendent, Trenberth, the same would be accepted; that, in accordance with the understanding with Masson, the outfit was submitted to Trenberth, and that Trenberth valued the stock as worth $165 a head; that at the time of his conversation with Trenberth one Pysell took a list of the equipment of the freighting outfit; that Trenberth appraised the horses at $165 a head.

Trenberth, called as a witness for the plaintiff, testified that
Masson had a talk with him regarding a freight outfit he had
hired from the plaintiff; that Masson told him to receive the
stock, look at it and value it; that Masson told him that the
stock was to be paid for, and that he was to value the stock,
and that Kellam, the plaintiff, also told him that he, Tren-
berth, was to value the stock. The evidence also shows that
Trenberth did value the horses at $165 each. There was no
denial by Masson or by anyone of the fact that he instructed
Trenberth to value the stock or that Trenberth had so valued
it. During the direct examination of Trenberth, the follow-
ing occurred in reference to the examination by Trenberth of
the outfit and the valuation of the stock:

"Q. I will ask you if Mr. Pysell didn't make a memoran-
dum of that matter at that time? A. He made a memoran-
dum of the stuff turned in and the valuation of the stock.

"Q. Did you tell him what to put in that memorandum?
A. I did.

"Q. Who was Mr. Pysell, what was he doing there? A.
He was timekeeper.

"By Mr. Anderson: We object to all this, what Mr. Pysell
did, because the plaintiff testified that he had nothing to do
with Pysell or with Trenberth relative to the terms of the
contract.

"By the Court: The objection is overruled.

"By Mr. Clark: Q. You know Mr. Pysell's handwriting,
do you not, Mr. Trenberth? A. Yes; I think that is Mr.
Pysell's handwriting.

"Q. Examine that, and state whether or not that is the
memorandum that was made at the time? A. I think that
is the outfit.

"By Mr. Clark: We ask now that that be marked 'Plain-
tiff's Exhibit 1.'

"By the Court: By that being the outfit do you mean that
is the list made at the time? A. Yes, sir; when it was turned
over to the company.

"By Mr. Anderson: We object to it.

"By Mr. Clark: We ask that it be marked 'Plaintiff's Ex-
hibit 1.'

"By Mr. Anderson: We object to it as immaterial, irrele-

vant, and incompetent, and as not tending to prove any of the issues in this case, and showing no authority by the Arizona Power Company by a competent agent duly authorized by contract.

"By the Court: The objection is overruled. It may be admitted."

The document thus received was a schedule of the stock and outfit of the plaintiff, and contained, among other items, an item "2 chains 25' long," which item was an item in dispute in the case, one of such chains, according to the allegations of the plaintiff, not having been returned by the defendant. The document in question, therefore, was relevant and material so far as this disputed item was concerned and was competent as proof of the delivery thereof, it having been made by Pysell under the direction of the representative of the defendant. The document, however, contained at the bottom the following notation by Pysell: "The average value of his horses was estimated by himself & Mr. Trenberth at $165.00 per head." The objection now made by the appellant to the introduction of this document goes not to its relevancy or materiality with respect to the items of the outfit, but with respect to this notation by Pysell as to the valuation of the horses, it being claimed by the appellant that it was the mere hearsay statement of an outsider with respect to the alleged fact in dispute and therefore incompetent. If it be conceded that the statement in question was a mere voluntary statement of Pysell's and not a notation directed to be made by Trenberth, with respect to which the evidence leaves us in doubt, nevertheless we think the appellant may not successfully claim that the judgment should be reversed on account of the introduction of the document. The document itself, in part at least, was competent. The court's attention was not directed to the statement that is now objected to. No motion was made with respect to the introduction of that part of the document or that that part of the document should be withdrawn from the consideration of the jury. The objection to the document was that it was incompetent because Trenberth had no authority to bind the defendant company, and not that it contained a statement that was not proper to go before the jury. Where a document is in part relevant and

material and competent, but contains other matter not competent, the attention of the trial court must be directed to the incompetent part thereof in order that the same may be excluded before error can be predicated upon the admission of the document as a whole. Further than this, however, the introduction in evidence of the statement in question was not in itself such error as requires a reversal of the case under the facts and circumstances and under the issues as framed by the pleadings. The agreement in question, whatever it was— and the terms of the agreement was a question of fact that was properly left for the jury to determine—was an oral agreement made between the plaintiff and Masson. It was not claimed that the agreement was between the plaintiff and Trenberth or that the agreement was in any way changed, extended, or modified by any conversation between the plaintiff and Trenberth. The plaintiff's claim was founded upon the oral agreement as made between him and Masson. The plaintiff's claim was that Masson agreed to pay him for the value of any horse killed, and that Trenberth was to appraise the value of the horses. Trenberth testified that Masson told him that he was to appraise the value of the horses, and both the plaintiff and Trenberth testified that he did so value the horses at the sum of $165. There was no evidence to contradict the fact of this valuation by Trenberth, and Masson did not attempt to dispute the claim that he directed Trenberth so to value the stock. The fact of the valuation by Trenberth at $165 was therefore a fact about which there was no dispute in the evidence; the dispute being not as to the fact of the valuation by Trenberth, but as to whether or not Masson had agreed that they should be so valued. The statement, therefore, made by Pysell on the document which was admitted in evidence, even though improper to be admitted, was mere cumulative evidence of a fact already amply testified to and about which there was no dispute, viz., the actual valuation by Trenberth of the stock at $165 a head. Therefore the error assigned in this regard by the appellant is not well founded.

It is further claimed that the trial court erred in refusing to admit certain evidence offered by the defendant. Numerous rulings of the court in this respect are objected to. One is that the defendant was improperly precluded from proving

that the plaintiff was not the sole owner of the outfit, but that the plaintiff's brother was a part owner thereof; the claim of the appellant being that he was thereby precluded from showing that the contract terminated prior to the time when the horse in question died. The trial court refused the evidence on the ground that it was not competent under the pleadings in the case. In this we think the trial court was right. The answer of the defendant admitted that an agreement for the use of the freighting outfit had been entered into. It denied that the terms of the agreement were as set up in the complaint, but the answer nowhere alleged that the agreement had terminated or that a new agreement had taken the place of the old agreement. The answer denied any agreement to pay any sum for any horse killed, but admitted its liability under the agreement of use in the sum of $302. Under this state of the pleadings, we think the trial court was right in refusing to receive evidence of the termination of the contract in the absence of any allegation thereof in the answer. The appellant points out that in paragraph 3 of the answer there is this denial: "Denies that there was any contract in existence between plaintiff and defendant at the time plaintiff's horses died as alleged in the plaintiff's complaint, whereby defendant was to pay $165 for the same, or any other sum"— and claims that this denial is sufficient to admit of the introduction of the evidence desired. But it is to be noted that the denial is not a denial of the existence of the contract at the time the horse died, nor can it be construed to be an allegation of the termination of the contract, because the denial is in terms merely a denial of the existence of a contract "whereby the defendant was to pay $165 for the horse, or any other sum." The appellant further claims that under a general denial evidence of the termination of the contract might properly be introduced. Conceding this to be true, the answer of the defendant was not in effect a general denial. The answer of the defendant admitted the execution of a contract, but denied that the contract contained certain terms as claimed by the plaintiff. The issues raised by the answer were therefore as to the terms of the contract and not as to its existence, and by reason of these averments and admissions in the answer the defendant was properly prevented from the

introduction of such evidence as, under a general denial alone, might have been proper. The plea in question was not the plea of general issue, but the specific plea that the terms of the contract were not as broad as claimed by the plaintiff.

It is claimed that certain instructions given by the court were erroneous in respect to the authority of Masson to bind the defendant company, but under the admissions in the answer and the evidence we think the appellant may not predicate reversal thereon.

A reversal is also sought on the ground of improper conduct on the part of the plaintiff in paying a witness the sum of $100 for his testimony. The matter was brought before the trial court on the motion for a new trial upon affidavits by the defendant that this sum had been improperly paid a witness for his testimony. Payment of this sum to the witness was denied by the plaintiff, and the motion for a new trial was refused by the trial court. Whether or not the $100 paid by the plaintiff to the witness was a proper payment was not determined by the trial court, nor, indeed, was the fact of whether or not such sum was ever paid determined by the trial court, except so far as from the denial of the motion for a new trial we may infer that the trial court determined the matter adversely to the appellant's claim. In any event, the record in that regard before us is not such as to enable us to pass upon the facts.

Upon an examination of the whole record, we are of the opinion that the issues framed by the pleadings were properly presented to the jury, and that there is nothing in the record that would warrant us in disturbing their verdict, and the judgment is therefore affirmed.

DOAN, CAMPBELL and LEWIS, JJ., concur.