FRANK W. CARLETON *vs.* HERBERT E. FLETCHER et als.

County of Sagadahoc. Decided December 20, 1912. The plaintiff brought this action against the defendants to recover damages alleged to have been directly caused by their willful and malicious conduct as judges of the horse races in September, 1911, in suspending the plaintiff's horse, Baron Sidnut, from competing over any track of the National Trotting Association, and also the consequential damages resulting from such suspension. The jury returned a verdict in favor of the plaintiff for $708.15.

The case comes to the Law Court solely on a motion to set aside the verdict as against the evidence. No exceptions were taken to the admission or exclusion of evidence, or to any instructions given to the jury by the presiding Justice.

In the 2.20 race three horses were entered, viz., Katherine Kohl, Baron Sidnut and Roanbird. The plaintiff was the owner of Sidnut and F. H. Wiggin, superintendent of the horse department of the society, was the owner of Roanbird. A. E. Russell was the driver of Sidnut, and Robert Waite the driver of Roanbird. In the fourth heat, according to the testimony for the plaintiff, Katharine Kohl had the pole with Sidnut next and Roanbird outside. As they went down the turn, Waite driving Roanbird touched her with the whip and swung up against Sidnut's wheel and onto his legs, causing him to break and run. Thereupon, Waite pulled away, and Russell got Sidnut back to his stride and finished second. But the defendants, as judges of the race, set Baron Sidnut back for "foul

driving and interfering" on the part of Russell, his driver. Russell appeared before the judges and attempted to explain the incident according to the facts, as claimed by him, when he was knocked down by Waite, in the presence of the judges, and beaten and bruised until he was unconscious.

For this flagrant violation of the rule, the judges not only failed to impose upon Waite the penalty prescribed by the association or even to administer a reprimand; but rendered their decision as above stated.

It appeared that in this heat the plaintiff's horse, Baron Sidnut, cast the larger part of one of his shoes, but owing to the fact that his driver had been temporarily disabled by the assault committed upon him by Waite, the loss of the shoe was not discovered for ten or fifteen minutes after the heat. Prompt inquiry and search were then made for a blacksmith, but when one was found only five minutes remained before the fifth heat was to be started. The judges thereupon required the plaintiff to have his horse shod in that time, or race him without being shod. The blacksmith declared that it was impossible to put on a shoe in five minutes, but the judges ordered the fifth heat to go on without Baron Sidnut; and the plaintiff claimed that the heat was started and raced after sunset, in violation of the rules, Waite being allowed to drive Roanbird without censure for the past or warning for the future.

The next day the plaintiff "protested this action of the judges in terms which reflected upon their good faith." Thereupon, by order of the judges, the plaintiff's horse, Baron Sidnut, and his driver, A. E. Russell, "were suspended for sixty days for foul driving in the fourth heat."

But after learning that they had no authority to suspend the plaintiff's horse for foul driving, the judges informed the plaintiff that if he would withdraw his protest they would withdraw the suspension of his horse and driver. The plaintiff declined to accept this proposition, and ten days later, on the plaintiff's application, Baron Sidnut, and his driver, A. E. Russell, were temporarily reinstated by the President of the National Trotting Association, and December 14th following, this action was confirmed by the board of review.

The plaintiff also calls attention to the fact that F. H. Wiggin, the owner of Roanbird, by virtue of his position as superintendent

of the horse department, appointed the defendants judges of the races, and then bought pools on his own horse for the 2.20 trot the night before the race.

It is claimed in behalf of the plaintiff that these facts and circumstances are clearly established by the evidence. It is contended that in setting back Baron Sidnut for "foul driving," in ignoring the violent assault committed upon the driver, in refusing to give the plaintiff an opportunity to have his horse shod for the fifth heat, and in ordering the heat to be raced that evening with Sidnut left out, the defendants were acting in pursuance of a preconceived purpose to favor Roanbird to the disadvantage of Sidnut and the detriment of the plaintiff; and it is further contended that in suspending the plaintiff's horse and driver for sixty days for foul driving, the defendants not only acted illegally, but willfully and maliciously in order to punish the plaintiff for presuming to file a protest against their action.

The defendants deny all of the material allegations against them, and insist that in all respects they acted in good faith according to their best judgment. As might be expected, there was a conflict of testimony in regard to facts and circumstances connected with the 2.20 race in question. It was not in controversy that with respect to those performing quasi judicial duties, like the defendants, the legal rule of judicial immunity is limited by the principle of good faith and honest purpose. But the evidence to prove that they acted willfully and maliciously and in a vindictive spirit should be clear and cinvincing. Upon a careful examination of the printed testimony, the liability of the defendants does not appear to be entirely free from doubt. But the jury had the advantage of hearing the witnesses and observing their manner and bearing on both direct and cross examination. It was a question which they were peculiarly qualified to determine, and their decision does not appear to be so manifestly wrong as to require the interposition of the Law Court to set it aside.

The plaintiff was subjected to substantial damages in the expenditure of time and money required to obtain a reinstatement of his horse. According to the plaintiff's evidence, this item alone was at least fifty dollars. But the plaintiff was entitled to recover punitive or exemplary damages in addition to the actual damages sustained.

If the jury awarded the entire balance of the verdict above fifty dollars as exemplary damages, it cannot be deemed excessive. It is therefore unnecessary to consider the question of the probable winnings of the plaintiff's horse in subsequent races. Motion for new trial overruled. *A. J. Dunton & Morey,* for plaintiff. *Pattangall & Plumstead,* for defendants.