**DALLAS RY. CO. v. WARLICK et al.**
**(No. 750—4345.)**

(Commission of Appeals of Texas, Section A. June 16, 1926.)

**1. Trial �köm219.**

Where court submitted issue of whether injuries to woman boarding street car were proximate result of conductor's negligence, refusal to define proximate result *held* error, in view of Rev. St. 1925, art. 2189.

**2. Negligence ⊙⇒56(1).**

"Proximate result" may be defined as result ordinarily following from negligence complained of, unbroken by any independent cause, and which might have been reasonably foreseen.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Proximate Result.]

**3. Appeal and error ⊙⇒1067.**

Where jury found injuries were due to street car conductor's negligence, but did not find respect in which he was negligent, error in refusing to define proximate result in submitting issue *held* reversible.

**4. Negligence ⊙⇒136(25.)**

Question of proximate cause is usually one of fact.

**5. Carriers ⊙⇒320(30).**

What act or omission proximately caused or contributed to cause injury to woman attempting to board street car *held* for jury.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Action by Mrs. Addie Warlick and others against the Dallas Railway Company. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (268 S. W. 512), and defendant brings error. Judgments reversed, and cause remanded to district court.

Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, for plaintiff in error.

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. N. Coombes, Otis Bowyer, Jr., and C. F. Greenwood, all of Dallas, for defendants in error.

BISHOP, J. Defendants in error, Mrs. Addie Warlick and her husband, instituted this suit in the district court of the Forty-Fourth judicial district of Dallas county against the plaintiff in error, Dallas Railway Company, alleging that it is a corporation owning and operating its cars in and along the streets of the city of Dallas, conveying passengers to various points in the city as a common carrier of passengers for hire; that, desiring to become a passenger, Mrs. Warlick, while its car was stopped for the purpose of allowing passengers to board same, attempted to get on said car by taking the handhold with her hand and placing her foot on the step of said car; that the conductor negligently closed the door of said car before she had boarded same; and that closing the door also closed and folded the steps of said car, catching and fastening her foot between the steps and the car, which caused her to fall to the ground and be dragged along the street, whereby she sustained the injuries complained of; that plaintiff in error and its employees in charge of the car were negligent in the following particulars to wit; (a) In failing to give her an opportunity to board the car without being injured; (b) in closing the door and fastening her foot, and then moving the car along the street, dragging and jerking her on and against the hard pavement of the street; (c) in failing to see and discover her when she was in the act of boarding the car; (d) in moving the car and in not stopping sooner. In addition to these specific acts and omissions charged as negligence, they also alleged generally that Mrs. Warlick had become a passenger, and that plaintiff in error was negligent in failing to exercise a very high degree of care toward her. They alleged that she sustained the injury for which judgment was sought as a direct and proximate result of the negligence of plaintiff in error.

Plaintiff in error answered by general denial, and also alleged that Mrs. Warlick's injury was not caused by any acts of negligence upon its part, but was caused solely by her conduct in that she attempted to board the car after same was started, and without using proper care for her safety; that she ran up to the steps after the conductor had started to close the door and attempted to board the car while it was in motion; and that as soon as the conductor discovered her condition he gave notice to the motorman to stop the car.

Mrs. Warlick testified:

"As we were going up Lamar street we saw the car coming, and it stopped, and the people were getting on, and I hurried because I wanted to be there in time, and the car was stopped, was not in motion, and I put my right foot up. I took hold of the handle, then I lifted my left foot to get on the platform, when the conductor turned his back a little to the corner, to the back this way, and he pulled the bell cord, and then he just turned around this way (indicating) and closed the door. That caught my right foot in the step, then it threw me backwards, and I was dragged along on this side until he must have loosened the door or step, and that threw me then to the pavement. I was dragged about 20 feet. I was on the step and lifting my foot to go into the car, but I did not get in. The conductor pulled the bell cord and closed the door about the same time. The conductor was making change for some passengers; the passengers were standing on this side entering, just before they entered there by the cash box; they were standing in the vestibule. * * *"

F. B. Felton, witness for plaintiff in error, testified:

"At the time she undertook to get on the car, the car was moving; it had stopped and taken on some passengers and was just starting up when she started to get on. She taken hold of those grabirons, I call them, just as it was starting, and it jerked her down. I couldn't say if she ever got her foot up on the step or not. At the time she did that I couldn't state whether the step was up or down or was being raised; I never noticed if the door was closed or open. I don't know how far the car had moved at the time she undertook to board it, but 4 or 5 or 6 feet, I guess; it was just starting off. When she grabbed the iron there and the car jerked her down her hand came loose from the handhold, and she fell on the pavement. I did not see her hang onto the car in any way. It looked to me like when the car was in motion it just jerked her down in the street. She fell in the direction the car was going; she got plumb down on the ground; she was not flat on her back, but just looked like it jerked her down. * * *"

The conductor testified:

"On the occasion of the accident I saw this lady fall; at that time the car was in motion; to the best of my judgment it had gone about 6 or 7 feet when I saw that. The doors might not have been entirely closed at that time, but they were what you would call closed doors when she fell. I was in the act of closing them when I saw her. She fell from the step there or from the side of the step—I don't know what she fell from. When I saw her fall I gave one bell, and the motorman stopped immediately, and I opened the door and walked out and some gentleman had picked her up. * * * I was observing the passengers that got on to see if they paid their fare, and I saw no one on the outside when the car started. There was nothing that impressed itself upon my mind until I saw the lady fall. I don't know what caused her to fall. I did not see her put her foot up on the bottom step, and I did not see her try to put her other foot up on the vestibule of the car. I did not see her take hold of the handhold on the inside of the car. That handhold or rod is on the inside of the car when the door is closed; it is two or three inches from the doors when they are closed and on the inside of the doors. If she had hold of the handhold and the door was closed that could tear her hand loose and cause her to fall, but that did not happen. The

first I saw of the lady was when she was lying in the street."

The evidence shows that the door of the street car was closed by means of a lever, and that closing the door also folded the step. There was testimony to the effect that it was not possible to close the door with a person on the step of the car.

The jury, in response to special issues submitted, found that Mrs. Warlick got on the steps or platform of the car with intention to become a passenger, using that degree of care for her safety which an ordinarily prudent person would have used under the same or similar circumstances, and that the car was not in motion at the time she undertook to board it. Whether her foot was caught and fastened between the step and the car, whether she was dragged along the street, whether the car was in motion at the time she fell, and whether she was caused to fall by the folding of the step or by the movement of the car, or by both such folding and movement, were all issues of fact upon which the jury were not by the charge of the court required to make any finding. The only issue of negligence on the part of plaintiff in error submitted to the jury was special issue No. 4, as follows:

"Do you find from the evidence that the conductor of the car on the occasion in question exercised that high degree of care for the safety of Mrs. Warlick that a very cautious and prudent person would have exercised toward her under same or similar circumstances?"

The court also submitted the following special issue, to wit:

"Do you find from the evidence that she was injured as a direct and proximate result of the failure of the conductor to exercise that high degree of care toward her that a very cautious and prudent person would have exercised under the same or similar circumstances?"

On the verdict returned by the jury the court rendered judgment for defendant in error, and this judgment was by the Court of Civil Appeals affirmed. 268 S. W. 512.

[1, 2] The court did not define the term "proximate result" used in the submission of this issue, and plaintiff in error objected to the court's failure to do so. It also requested the court to submit the following:

"By the term 'proximate result,' as that term is used in the issue submitted to you, is meant a result that would naturally and ordinarily follow from the alleged acts complained of, if you find that the same occurred, unbroken by any new and independent cause, and, in view of all the facts and circumstances, might have been reasonably foreseen as likely to result."

If the conductor's negligence was the "proximate cause" of the injury, then her injury may be said to have been the "proximate result" of the conductor's negligence. So, if plaintiff in error was here complaining that the court had refused to submit to the jury a special issue as to whether the conductor's negligence was the "proximate cause" of the injury, a complete answer to this complaint would be that the court had submitted this issue by requiring the jury to find whether the injury was the "proximate result" of the conductor's negligence. The term "proximate result" is a legal term in contemplation of the statute, requiring that "in submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues." Article 2189, Revised Civil Statutes 1925. The trial court, over the objection of the plaintiff in error, refused to define to the jury the term "proximate result," and also refused to give in charge to the jury its special requested instruction defining this term. The definition requested is a substantially correct one, and is not subject to the objection that it would have tended to confuse the jury. If a substantially correct definition of a term would be confusing, then the term itself should not be used in the charge. The term would be subject to the same objection. Here the use of the term was proper, and the refusal of the court to define same as provided by positive statutory requirement is error.

[3-5] Claim is here made that Mrs. Warlick's injury was the "proximate result" of the conductor's negligence as a matter of law, and for this reason the refusal of the court to define this term is immaterial error. The jury in this case did not find that the conductor was guilty of any particular negligent act or omission. They only found that the conductor of the car on the occasion in question did not exercise that high degree of care for the safety of Mrs. Warlick that a very cautious and prudent person would have exercised toward her under the same or similar circumstances. In what respect he failed to exercise such care we are not advised by this record. The question of proximate cause is usually one of fact, and under the evidence in this case, without knowing what act or omission on the part of the conductor was by the jury found to constitute negligence, we would not be warranted in holding that as a matter of law his negligence was such that the result (some injury of this or a like character) ought to reasonably have been foreseen. The evidence as to how this accident occurred is conflicting, and the question as to what act or omission proximately caused or contributed to cause the injury is one of fact which should have been submitted to the jury.

We recommend that the judgments of both courts be reversed, and the cause remanded to the district court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.