EDQUEST, Respondent, *v.* TRIPP & DRAGSTEDT CO.
ET AL., Appellants.

(No. 6,989.)

(Submitted January 28, 1933. Decided February 16, 1933.)

[19 Pac. (2d) 637.]

448

*Mr. J. A. Poore,* for Appellants, submitted a brief and argued the cause orally.

*Mr. James H. Baldwin* and *Mr. Alex. Levinski,* for Respondent, submitted a brief; *Mr. Baldwin* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff commenced this action against the defendants for the purpose of recovering actual and exemplary damages.

The defendant corporation on November 15, 1930, and for a number of years prior thereto, was conducting an apartment house in the city of Butte. The defendant Lindquist during the same period of time was an employee of the corporation in charge of the apartment house, performing certain janitor services, and collecting the rents. The plaintiff, his wife and grown daughter were tenants of the defendant corporation from the year 1923 to and including the month of November, 1930.

The defendant Lindquist claimed, at various times for over a period of five years prior to November 15, 1930, his money aggregating the sum of $644, had been taken from his apart-

ment or office; that likewise other tenants had lost various sums of money from their apartments, also certain articles of personal property. Lindquist, on or about the 10th of November, 1930, reported the loss of the money and property to the chief of police of the city of Butte, and thereupon Police Officer Hannigan was detailed to assist in the apprehension of the person or persons who had been taking money and property from the apartment house. On the morning of November 15, 1930, the defendant Lindquist and Officer Hannigan deposited near a first floor apartment entrance, adjacent to a doorway opening from one of the streets into the apartment house, a pound of butter, a loaf of bread and a can of coffee. Thereupon these parties stationed themselves in a vacant apartment in view of these articles, where their presence was concealed from persons entering the apartment house from the street, and awaited developments. Mrs. Edquest, the wife of plaintiff, entered the apartment house from the street, carrying a sack of potatoes; observing the articles, she removed the pound of butter, inclosed in a pasteboard carton not otherwise wrapped, from the floor. After taking a few steps, she was detained by the officer, placed under arrest, and removed to the city hall in the police patrol wagon, accompanied by the officer and defendant Lindquist. After a little delay the same parties departed for the office of the county attorney, where one of the deputies was interviewed, and who made inquiry of the defendant Lindquist as to whether or not he desired to file a charge against Mrs. Edquest for stealing the pound of butter, to which he replied that he did not, and the deputy county attorney remarked, "I don't know anything about this case. Take her out of here." Mrs. Edquest was then taken to the sheriff's office and lodged in the county jail, where she was held for several hours.

Plaintiff testified that about noon he met Lindquist in the vicinity of the apartment house and was informed his wife was in the county jail for the theft of the pound of butter. A conversation ensued wherein Edquest was informed of the shortages, and promised Lindquist to make restitution for all

sums of money lost both by Lindquist and the other tenants, in order to secure the release of Mrs. Edquest. After the promise of payment, they went to the county jail; the defendant Lindquist advised the sheriff that he did not desire to prosecute Mrs. Edquest; she was then released.

Following the return home of the plaintiff and his wife upon the same day, a conversation occurred between the plaintiff and the defendant Lindquist, at which time a statement in writing was furnished plaintiff of the various items of loss suffered by Lindquist and other tenants; also Lindquist threatened to prosecute Mrs. Edquest and send her to the penitentiary for the various thefts committed in the apartment house during the past five years, if payments were not made as promised.

Lindquist testified that he departed for Mandan, North Dakota, the former home of plaintiff's wife, to search for missing articles of property; finding none, he returned to Butte, where he encountered the plaintiff, who, according to his testimony, protested the innocence of Mrs. Edquest, and again Lindquist threatened to cause the imprisonment of his wife in the penitentiary if complete restoration of the funds taken was not made. Plaintiff thereupon paid Lindquist by check the amount of the claimed shortage in the sum of $644, and also paid the Lindborg sisters, who were tenants in the building, the sum of $40. The action was for the recovery of the sum of $684 claimed to have been paid under duress, and for exemplary damages.

The trial resulted in a verdict in favor of the plaintiff for $684 actual damages, and $4,000 exemplary damages. A motion for new trial was made, heard and, pending decision thereon, the trial court suggested to plaintiff that he remit $2,000 of the punitive damages. Plaintiff accepted the suggestion, and in writing consented that the amount of punitive damages be $2,000 instead of $4,000. The motion for new trial was denied. The appeal to this court is from the judgment.

The court received in evidence, over objection, two annual reports for the year ending December 31, 1928, and

the year 1930, filed in the county clerk's office by the defendant corporation. These reports disclosed the amount of authorized capital, the amount of capital stock paid in cash, the debts of the corporation, the names and addresses of directors and officers, and designated the office, if any, held by each of the persons mentioned therein. The defendants objected upon the ground that, the action being in tort against two defendants for a joint judgment, evidence of wealth of the defendants was inadmissible; that the offered exhibits were incompetent, irrelevant, and immaterial.

A portion of the offered exhibits was admissible for the purpose of establishing the identity of the officers of the corporation, as during the progress of the trial conversations between the plaintiff and the same officers were received in evidence as a part of plaintiff's case. The rule is that evidence may be admissible for one purpose but not for another. If, however, offered evidence is properly admissible for any purpose, it may not be excluded. (*Outlook F. Elevator Co.* v. *American Surety Co.*, 70 Mont. 8, 223 Pac. 905; *Hester* v. *Western L. & A. Co.*, 67 Mont. 286, 215 Pac. 508.)

The objection to a series of documents as a whole is not well taken if some of them are admissible. (*Thornton-Thomas Mercantile Co.* v. *Bretherton Co.*, 32 Mont. 80, 80 Pac. 10.)

Where an instrument or document is offered in evidence, a portion of which is admissible and another part of which is inadmissible, it is the duty of counsel seeking to exclude the objectionable part to specify the same, and, in the absence thereof, the whole instrument is properly received in evidence. (*Groot* v. *Oregon Short Line R. Co.*, 34 Utah, 152, 96 Pac. 1019; *Walker* v. *Maddox*, 105 Ga. 253, 31 S. E. 165; *Cole* v. *Johnson*, 103 Or. 319, 205 Pac. 282; *Aetitus* v. *Spring Valley Coal Co.*, 246 Ill. 32, 92 N. E. 579, 138 Am. St. Rep. 221; *Vinal* v. *Inhabitants of Town of Nahant*, 232 Mass. 412, 122 N. E. 295; *Arizona Power Co.* v. *Kellam*, 13 Ariz. 291, 114 Pac. 561.)

Objection was made to the reception of evidence with reference to the wealth of the defendant Lindquist, and

also to the instruction of the jury that in arriving at their verdict, with reference to punitive damages, they might consider the wealth of the defendants. The basis of all of these objections was, the defendants being joint, a joint judgment, if any, would be obtained, with no apportionment thereof among joint tort-feasors.

This court has held that, in assessing punitive damages, the jury should take into consideration all of the circumstances surrounding the act complained of, and may consider the wealth and pecuniary ability of the defendant (*Johnson* v. *Horn*, 86 Mont. 314, 283 Pac. 427; *Ramsbacher* v. *Hohman*, 80 Mont. 480, 261 Pac. 273; *Winterscheid* v. *Reichle*, 45 Mont. 238, 122 Pac. 740), although some courts hold to the contrary (17 C. J. 996). In each of the above cases the action was against a sole defendant.

Defendants assert that this court has committed itself to the rule, namely that where an action is being prosecuted against joint tort-feasors, evidence of the wealth of either or all is inadmissible, under the authority of *Winterscheid* v. *Reichle*, supra. A quotation appears in the opinion of that case from 13 Cyc. 211, to that effect, but the court there had before it the question as to the admissibility of evidence of wealth of a single defendant. The decision of a court in any case should be read in the light of the precise question then under consideration. (*State ex rel. Malott* v. *Board of County Commrs.*, 89 Mont. 37, 296 Pac. 1; *State ex rel. Walker* v. *Jones*, 80 Mont. 574, 261 Pac. 356, 60 A. L. R. 551.)

Defendants further assert the court in its decision in *Manley* v. *Harer*, 82 Mont. 30, 264 Pac. 937, adopted the rule in accordance with their contention. It was there sought to show evidence of ill will for the purpose of establishing malice entertained against the plaintiff by two among a large number of defendants. The action was one for libel. In that particular form of action, evidence of malice is admissible for two purposes; namely: (1) To increase the amount of damage; and (2) in order to destroy the claim of privileged communication. The court had under consideration a case wherein

a publication which from its nature and character was privileged, unless malice was established, and held, in order to introduce evidence of malice in a libel case for the purpose of destroying the privilege claimed by the defendant, the evidence could not be received, unless the ill will was entertained by all the joint defendants.

These cases relied on by defendants are clearly distinguishable from the case under consideration. This court has not heretofore passed upon the question raised.

Defendants cite authorities, among which are the cases of *Washington Gaslight Co.* v. *Lansden,* 172 U. S. 534, 19 Sup. Ct. Rep. 296, 303, 43 L. Ed. 543; *McAllister* v. *Kimberly-Clark Co.,* 169 Wis. 473, 173 N. W. 216; *Walker* v. *Kellar,* (Tex. Civ. App.) 218 S. W. 792; *Singer Mfg. Co.* v. *Bryant,* 105 Va. 403, 54 S. E. 320, holding that, if evidence as to the wealth of a defendant is admitted and a verdict rendered for exemplary damages against joint defendants, there being no right of contribution between them, the less wealthy defendant may be compelled to pay a verdict based on the evidence of his more wealthy co-defendants, and thereby injustice would be done to the poorer defendant.

Other authorities take the view that the evidence may be received as to the wealth of any or all of the joint defendants in an action where exemplary damages are sought. (*Interstate Co.* v. *Lelia Garnett,* 154 Miss. 325, 122 South. 373, 756, 63 A. L. R. 1402; 17 C. J. 996.)

The cases on which the plaintiff relies, and others adhering to the same rule, all arise in jurisdictions where no general statute obtains providing when and under what circumstances exemplary damages are recoverable. Our statute, section 8666, Revised Codes 1921, provides: "In any action for a breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

To adopt the rule contended for by the defendants would limit the force and application of this statute, in that, where

the defendants are joint, the evidence as to the wealth of the defendants would be excluded, although otherwise properly admissible, and thereby plaintiff's right to recover exemplary damages diminished in amount. Exemplary damages may be recovered, in the absence of evidence as to the wealth of the defendant. (Compare *Long* v. *Davis*, 68 Mont. 85, 217 Pac. 667.) We recognize the rule that no such apportionment exists among joint tort-feasors in so far as compensatory damages are concerned, but hold that the jury in an action against joint tort-feasors may make awards for exemplary damages in different amounts, depending upon what the evidence shows and the jury finds to be the differing degrees of culpability among the several defendants. (*Thomson* v. *Catalina*, 205 Cal. 402, 271 Pac. 198, 62 A. L. R. 235; *Davis* v. *Hearst*, 160 Cal. 143, 116 Pac. 530; *Louisville etc. R. Co.* v. *Roth*, 130 Ky. 759, 114 S. W. 264; *Waggoner* v. *Wyatt*, 43 Tex. Civ. App. 75, 94 S. W. 1076.)

The jury may take into consideration the difference in financial condition of the defendants and impose different amounts as punishment upon them in case the conclusion is reached that both ought to be penalized. (*Nelson* v. *Halvorson*, 117 Minn. 255, 135 N. W. 818, Ann. Cas. 1913D, 104; *Hall Oil Co.* v. *Barquin*, 33 Wyo. 92, 237 Pac. 255.)

The imposition of different amounts of exemplary damages based either upon the culpability or the wealth of the different co-defendants avoids the injustice pointed out in the authorities relied upon by the defendants, and gives section 8666 the force and effect of permitting a plaintiff to recover "in any action" · exemplary damages coming within the purview of this statute.

The defendants might have requested the trial court to instruct the jury in accordance with the views herein expressed, but they failed to do so. They also had the privilege, if desired, of offering evidence as to their wealth. (17 C. J., sec. 295, p. 996.)

We conclude there was no error in allowing evidence of wealth to be received on the trial of this cause, and in instructing the jury that they might consider such evidence in arriving at the amount of exemplary damages to be awarded, if any.

Defendants assert the trial court committed error in admitting evidence, over the objection of defendants, of the physical and mental condition of plaintiff's wife before and after her arrest, and after payment by the plaintiff.

Where exemplary damages are claimed for wrongful acts of the defendant, all of the circumstances immediately connected with the transaction and tending to exhibit or explain it in its entirety are legitimate objects of inquiry. (4 Ency. of Evidence, 18; 1 Sedgwick on Damages, 9th ed., secs. 51, 83; *St. Louis & S. F. Ry. Co.* v. *Brown,* 62 Ark. 254, 35 S. W. 225.)

The extent of the injury inflicted is a proper subject of inquiry in order to determine the punishment to be imposed. (*Hall Oil Co.* v. *Barquin,* 33 Wyo. 92, 237 Pac. 255.)

It is urged that the court erred in permitting the wife of plaintiff to testify the defendant Lindquist had told her, that one Mrs. McIntyre had taken things from the apartment house. The evidence was an admission against interest (subd. 2, sec. 10531, Rev. Codes 1921), in view of the fact, according to the testimony in the record, that the defendant Lindquist had demanded the payment of all shortages arising during a period of five years prior to the date of the arrest; it appearing that this statement was made during said time, the evidence was admissible as tending to establish malice, as defined by subdivision 4 of section 10713, Id., which fact may be proved directly or by legitimate inferences drawn from other facts and circumstances in evidence. (*Klind* v. *Valley County Bank,* 69 Mont. 386, 222 Pac. 439.)

It is contended the court erred in refusing to permit the cross-examination of the plaintiff as to the physical condition of the wife after the date of the payments in question. An examination of the record reveals that counsel were seeking to ascertain her physical condition as it existed some six weeks subsequent to the occurrence in controversy. The trial court on direct examination of this witness had refused to permit counsel for the plaintiff to examine as to the condition subsequent to November 19, 1930, although in the examination of

some previous witnesses the physical condition of the wife subsequent thereto was the subject of inquiry, but not as to so remote a date. The previous witnesses the defendants were allowed to cross-examine fully. The scope of the direct examination of the particular witness having been limited by the trial court, no error was committed in confining the defendants within the same limit. (Sec. 10665, Rev. Codes 1921.)

Defendants insist the court erred in permitting counsel for plaintiff on cross-examination of Officer Hannigan to inquire if he was "setting traps" or trying to "set traps," referring to his action in the apartment house. The witness had testified, on direct, to the leaving of the various articles in the hallway of the apartment house, his partial concealment therein, his awaiting developments, the removal of the articles by the wife of plaintiff, and her arrest. The subject of the cross-examination was within the scope of the direct examination, and therefore proper. (Sec. 10665, supra.)

Counsel for the plaintiff were permitted to inquire of Officer Hannigan, over objection, if he did not know at the time of the arrest of Mrs. Edquest without a warrant, the law required that she be taken before a magistrate and a complaint there lodged against her. This was assigned as error. The ground of the objection was that the question required the witness to construe a statute or give his opinion as to the law. The question did not seek an opinion or construction, but was directed to the knowledge of the witness. If he did not know the law to exist, as assumed by the question, his conduct would not subject him to the same degree of censure as it would if he acted knowingly in violation of law. His knowledge or lack of knowledge on the subject of inquiry was important on the question of intent or lack of intent to injure, which was a vital matter in determining the existence of malice.

Certain instructions were offered by plaintiff and given as the law of the case, over objection of the defendants, wherein the jury was informed that, if the confinement and restraint of plaintiff's wife, or the threatened continuation of

the confinement and restraint of her person, and because of, and as a "proximate result thereof," plaintiff was put in fear, and his will overcome, and he paid the sums to defendant Lindquist and the Lindborg girls, or either or both of them, and he would not have done so had it not been therefor, the verdict must be for the plaintiff. It was urged that the words "proximate result" were improper in the instruction.

The term "proximate result" means a result that would naturally and ordinarily follow from the alleged act complained of, unbroken by any new and independent cause. (*Dallas R. Co.* v. *Warlick,* (Tex. Com. App.) 285 S. W. 302.) The term "proximate result" is synonymous with the term "proximate cause." (*Sloss-Sheffield Steel & Iron Co.* v. *Stewart,* 172 Ala. 516, 55 South. 785.) "Proximate cause" has been repeatedly defined by this court to be "one 'which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred.'" (*Bensley* v. *Miles City,* 91 Mont. 561, 9 Pac. (2d) 168, 171.)

It is argued that under this instruction it was possible for the jury to find a verdict for the plaintiff, even though the payments were voluntarily made. If the independent cause of the payments, and without which they would not have been made, was the various acts enumerated in the instruction, or any of them, the payments were not under such circumstances so made.

The term "proximate result" was not defined in the instructions, but no instruction was proposed covering the point. The jury was elsewhere instructed that, if the plaintiff of his own free will paid the sums of money mentioned in the complaint, the verdict must be for the defendants. One who has overcome the mind and will of another for his own advantage by threats directed against him or a member of his family, which deprives him of the free exercise of his will, is in no position to claim the advantage of a contract or money obtained in that manner. (*Portland Cattle Loan Co.* v. *Featherly,* 74 Mont. 531, 241 Pac. 322; *Clifford* v. *Great Falls Gas Co.,*

68 Mont. 300, 216 Pac. 1114.) No error was committed by the court in giving these instructions.

The court by instruction, over objections of the defendants, defined the word "extortion" in the language of sections 11389 and 11390, Revised Codes 1921. The basis of the argument with reference to the alleged error in this instruction is that only an abstract proposition of law was given. But, where the facts are few and simple, it is not error to give instructions containing abstract statements of statutory law. (*Johnson* v. *Horn*, 86 Mont. 314, 283 Pac. 427.) Furthermore, other instructions were given which applied the law to the facts in the case on this particular point.

Complaint is made of the action of the court in refusing to instruct the jury that it was the duty of a person who had reason to believe that a crime had been committed to report the facts within his knowledge to the police of the city of Butte. If under the facts in this case the participation of the defendants had gone no further than reporting the alleged thefts or loss of property from the apartment house, the instruction would have been proper; but the report was only the beginning of their conduct and introductory to the acts which were alleged to have been wrongful and of which complaint was made. Hence the principle of law, however correct it may be, was of no importance in this case, and the instruction was properly refused. (*Norton* v. *Great Northern R. Co.*, 85 Mont. 270, 278 Pac. 521.)

The court did, however, instruct the jury that a peace officer or a private citizen had the right to make an arrest without a warrant for a public offense committed or attempted in his presence, which was ample instruction on the question.

The other offered instruction, which was refused, on the subject of voluntary payment, was fully covered by an instruction given by the court on the same subject, and noted above.

It is urged that the evidence was insufficient to justify the verdict, being one of the grounds of the defendants' motion for a new trial. Under this assignment of error it is urged the evidence discloses that the payment was voluntarily made.

The plaintiff testified with reference to conversations had on the 15th of November, 1930, on being apprised of the fact that Mrs. Edquest was in jail because of the alleged theft of a pound of butter: "I says, 'What is your game?' He says, 'That I have put her in jail and I intend to keep her there until you pay all the shortages in the apartment since June, 1925.' I says, 'John,' I says, 'that is a very hard pill to take.' I says, 'When I know that my wife is innocent,' but, I says, 'What must I do,' I says, 'to get her out of jail?' I says, 'She doesn't belong there; she is not fit to be there right now.' Well, he says, 'It is after 12 o'clock now,' he says, 'and the banks are closed.' This was Saturday, and he says, 'You will have to get me the money.' * * * Well, I says, 'John,' I says, 'money doesn't matter,' I says, 'to me; I know my wife is innocent' I says, 'and I want her out of jail.' I says, 'Is that all you want, John, is money,' I said, 'Money don't count,' I says, 'it is my wife's health and her safety,' I says, 'that interests me most right now,' I says, 'in getting her out of jail.' 'Well,' he says, 'it is after 12 o'clock now' he says, 'and you cannot get into the bank, and what assurance will I have that I will get the money?' he says, 'what guaranty will I have?' * * * 'Well,' I said 'all I can do, John, outside of that guaranty is my word of honor,' I said, 'that I will pay you the money when I can get it, which,' I said, 'it will be Monday sure,' but I says, 'I want my wife out of jail.' So John Lindquist says, 'All right, we will go and get her out.' "

Plaintiff further testified upon the release of Mrs. Edquest and their return home, he had a conversation with defendant Lindquist as follows: "I went down to his office and tried to talk to him again about the matter, and tried to reason with him, tried to convince him that my wife was innocent. I could do nothing with him; he was like a mad man, couldn't reason with him, and it was up to me to pay what I guaranteed to pay or else he would have my wife rearrested and prosecuted and sent to Deer Lodge for grand larceny. He prepared a statement at that time of the amount that he required me to

pay. * * * He said that it is up to me to make this shortage good, as I promised to; if not, he would prosecute my wife for grand larceny, and he says, 'Do you know what grand larceny means?' I told him no, I didn't think I did. 'Well,' he said, 'it means stealing $250 or more, and I got witnesses to the fact that she has stolen $250, and unless you pay this money I will prosecute her on that charge.' I believed then that he would prosecute her if I didn't pay the money.''

He testified with reference to a conversation with Mr. Tripp, one of the officers of the corporation, occurring on November 16, 1930: '' 'Now,' I says, 'my wife is not guilty of this charge, and,' I says, 'I want to talk to you and see if I cannot convince you that she is innocent of the matter.' He says, that 'your wife was caught stealing a pound of butter and we will prosecute her to the limit,' and then he started to rave on and all that I could hear, 'we will prosecute her to the limit,' and it got pretty loud, so I thought I had better leave, and I went back upstairs again to my own apartment.''

The plaintiff testified with reference to the time he paid the sum of $644 to the defendant Lindquist: "At the time I delivered that check to Mr. Lindquist to keep my wife from being prosecuted by him, for grand larceny of money belonging to Tripp & Dragsted, he said I would have to pay the shortages listed by him as having been stolen by my wife from other apartments, and if I didn't make those payments, that he would prosecute my wife. I sure did believe that if I didn't make those payments that he would prosecute her.''

On cross-examination the witness testified the reason why he made the payments to the defendant Lindquist and the Lindborg girls was that he had so promised the defendant Lindquist. It is urged that this testimony demonstrates the payment was voluntary; if it may be said it is in contradiction of other testimony given by the plaintiff, the determination as to whether or not the payment was voluntary was nevertheless one for the jury. (*Hardie* v. *Peterson*, 86 Mont. 150,

464

282 Pac. 494. Compare *Ferguson* v. *Standley,* 89 Mont. 489, 300 Pac. 245.)

A careful reading of the record reveals that there was sufficient evidence, if believed by the jury, to justify the verdict, and it will not be set aside on the ground of insufficiency, even though the evidence is conflicting. · (*Staff* v. *Montana Petroleum Co.,* 88 Mont. 145, 291 Pac. 1042; *First National Bank* v. *Holding,* 90 Mont. 529, 4 Pac. (2d) 709.)

The defendants insist that the award of exemplary damages ▮▮▮▮▮▮ is so excessive as to evince passion and prejudice. The damages, as herein noted, were reduced from $4,000 to $2,000 by the trial court with the consent of the plaintiff. This court has frequently had under consideration this identical question, and discussed it at length, and reached the correct conclusion in the case of *Johnson* v. *Horn,* 86 Mont. 314, 283 Pac. 427, 429, as follows: "Defendant contends that the award of exemplary damages is excessive and the result of passion and prejudice on the part of the jury, for which a new trial should have been granted. Exemplary damages are allowable in this state when the defendant has been guilty of oppression, fraud, or malice, and are awarded for the purpose of punishing the defendant. (Sec. 8666, Rev. Codes 1921.) In assessing such damages the jury should take into consideration all the attendant circumstances surrounding the act complained of and may consider the wealth and pecuniary ability of the defendant. (*Winterscheid* v. *Reichle,* 45 Mont. 238, 122 Pac. 740; *Ramsbacher* v. *Hohman,* 80 Mont. 480, 261 Pac. 273.) The matter of fixing the amount of exemplary damages rests largely in the discretion of the jury. (*Cornner* v. *Hamilton* [62 Mont. 239, 204 Pac. 489], supra; *Ramsbacher* v. *Hohman,* supra.) Some courts hold that the award for exemplary damages may not be disproportionate to the actual damages sustained, while others declare that the only requirement is that the exemplary damages must bear some relation to the injury complained of and its cause. (17 C. J. 994, notes 3 and 4.) In this state it rests wholly within the province of the jury to fix the amount of damages, both com-

pensatory and exemplary, 'and, unless its determination appears to have been influenced by passion, prejudice, or some improper motive, or unless the amount is outrageously disproportionate, either to the wrong done or the situation or circumstances of the parties, the court will not generally interfere with the verdict.' (*Cornner* v. *Hamilton*, supra.) The courts have not established a definite formula to be followed in ascertaining whether an award for exemplary damages is excessive. As a consequence many courts hold that because an award of punitive damages is ten times the amount of actual damages awarded, as here, does not of itself demonstrate that the award is excessive. (*Ford* v. *McAnally*, 182 N. C. 419, 109 S. E. 91; *Carleton* v. *Fletcher*, 109 Me. 576, 85 Atl. 395; *Louisville & Nashville R. Co.* v. *Ritchel*, 148 Ky. 701, Ann. Cas. 1913E, 517, 41 L. R. A. (n. s.) 958, 147 S. W. 411; *Plotnik* v. *Rosenberg*, 55 Cal. App. 408, 203 Pac. 438.) "

Applying the foregoing rules, we hold, as was said by the court in the case of *Johnson* v. *Horn*, supra, "We cannot say from the variance between the actual and the exemplary damages alone that the court abused its discretion in denying the motion for a new trial upon the ground that the punitive damages were excessive."

Lastly, it is contended that the trial court committed error in submitting a form of verdict to the jury, specifying the sum of $684 as damages, together with a blank space for punitive damages. Under the evidence in this case plaintiff was entitled to recover as actual damages $684 or nothing. That being the only evidence before the court upon the subject, it was not error on its part to incorporate the amount in one of the forms of verdict submitted to the jury. (*Kelley-Clarke Co.* v. *Leslie*, 61 Cal. App. 559, 215 Pac. 699.)

We find no reversible error in the record. The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and STEWART concur.

Mr. Justice Angstman, Concurring Specially:

Were the question of scaling a verdict for exemplary damages one of first impression in this state, it would be my view that a new trial should be had under the facts here presented. When the trial judge suggested a reduction of the exemplary damages by one-half, his action was tantamount to a finding that he considered the verdict excessive. (*Waterman* v. *Minneapolis etc. R. Co.*, 26 N. D. 540, 145 N. W. 19.) With his discretion in such matters this court will not ordinarily interfere. (*State* v. *Anderson*, 92 Mont. 313, 13 Pac. (2d) 228.) Whatever the rule may be as to compensatory damages, it is my opinion that, when the verdict in the opinion of the trial court is excessive as to exemplary damages, the fixing of such damages being for the jury (section 8666, supra), it is the court's duty to grant a new trial rather than to suggest its reduction. (*Ahrens* v. *Fenton*, 138 Iowa, 559, 115 N. W. 233.) However, this court has taken a contrary view in *Puutio* v. *Roman*, 79 Mont. 226, 255 Pac. 730, and hence I concur in the opinion of Mr. Justice Anderson on this point, solely on the ground of *stare decisis*.

Rehearing denied March 14, 1933.